[No. 28580-7-I.   Division One.   May 18, 1992.]

TRIMEN DEVELOPMENT COMPANY, *Appellant*, v. KING COUNTY, *Respondent*.

*John W. Hempelmann, Janice Sue Wang,* and *Cairncross & Hemplemann, P.S.,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Charles E. Maduell, Deputy,* for respondent.

BAKER, J. — Trimen Development Company appeals from a summary judgment dismissing its claims that King County Code (KCC) 19.38 violates former RCW 82.02.020 because it conditions approval of certain subdivisions upon the reservation or dedication of land for parks or upon the payment of a fee in lieu of such reservation or dedication. We affirm.

### PLAT APPROVAL PROCEDURE

King County Building and Land Development Division (BALD) is the agency charged with reviewing preliminary plat applications. BALD files a report and recommendation with a King County zoning and subdivision examiner (hearing examiner), who holds a public hearing and makes a recommendation to the King County Council. The council then approves or denies the preliminary plat application. KCC 20.24.

Following the council's preliminary approval, the plat application is returned to BALD for submission and approval of engineering plans to satisfy the conditions set forth by the council in its preliminary approval. It is usually during this phase that an applicant decides whether to provide open space or pay a fee in lieu thereof pursuant to KCC 19.38.[1] Once the conditions for plat approval are met, the plat is forwarded to the King County Council for final approval.

WINCHESTER HILLS I AND II

In February 1987 and March 1988, Trimen submitted applications for subdivision approval for two developments known as Winchester Hills I and II, respectively. In Winchester Hills I, Trimen proposed to divide approximately 21 acres into 77 lots for detached single-family dwellings. In Winchester Hills II, Trimen proposed to divide approximately 20.3 acres into 41 lots.

The County determined that Trimen could dedicate or reserve 5 percent of each of the proposed subdivisions, or 1.08 acres in Winchester Hills I and 1.016 acres in Winchester Hills II, which was the equivalent of 3 to 6 lots in each development. Suitable land for such a dedication or reservation was available in each subdivision. Offsite land within the same park service area could have been acquired and substituted. Alternatively, pursuant to KCC 19.38 Trimen had the option of electing to pay a fee in lieu of such a reservation or dedication.

---

[1]KCC 19.38.020 provides in relevant part:

"Every subdivision final approval [within certain zones] shall be contingent upon reservation or dedication of land for the open space and recreational needs of its residents or payment of a fee-in-lieu thereof. The developer may either reserve or dedicate land, or make payment of a fee-in-lieu thereof[.]"

Subsequent sections of the ordinance set forth the amount of land to be dedicated or reserved, KCC 19.38.060, provide that unless land is dedicated or reserved, subdivision approval shall be contingent upon payment of a fee appropriated for the development of parks in the park service area serving the proposed subdivision, KCC 19.38.070, and set forth a formula for calculating the fee imposed, KCC 19.38.080.

Following the public hearing for Winchester Hills I, the County Council conditioned its approval of the preliminary plat as follows:

26. The applicant shall comply with KCC 19.38 regarding the provision of common open space with [sic] the subdivision or payment of a fee-in-lieu of open space dedication. If open space is provided an open space plan must be submitted for review and approval by BALD.

Trimen did not object to or appeal this requirement.

Following preliminary approval, Trimen proposed an open space plan which was disapproved because it was not equivalent in value to what the ordinance required and would have disturbed sensitive slopes. No further dedication or reservation options were pursued. Instead, Trimen proposed a recalculation of the fee in lieu of dedication that reduced the fee from the level suggested by the County. The County accepted the recalculation, resulting in a fee of $52,349.37. Trimen paid this fee without protest and obtained final approval of the plat, which was recorded on September 27, 1988.

At the time the Winchester Hills II plat was processed by BALD in the spring of 1988, applicants were required to show open space to be dedicated or reserved on the face of submitted plans. Since the Winchester Hills II application did not show any such open space on the plans submitted, BALD assumed that Trimen had elected to pay a fee. BALD's report stated that "[t]he applicants' design provides no suitable open space area, and, therefore, payment of a fee will be required as a condition of approval." Accordingly, BALD's recommendation, which was adopted by the hearing examiner, was as follows:

29. The applicant shall comply with K.C.C. 19.38 by paying a fee to the Parks Division in-lieu-of providing onsite open space.

There was no indication at the time of the public hearing that open space as opposed to a fee in lieu thereof was at issue. Following the hearing, Trimen appealed some of the other conditions contained in the hearing examiner's report

and recommendation to the council, but did not challenge the fee in lieu of dedication provision. The hearing examiner issued a revised report, which did not in any way modify condition 29, and Trimen withdrew its appeal.

Trimen could have elected to provide open space at any time prior to final plat approval. The County subsequently granted approval of the Winchester Hills II preliminary plat in accordance with the hearing examiner's revised report and conditions.

Following preliminary approval by the council, Trimen's agent corresponded with county representatives regarding compliance with condition 29. A trail proposed in Winchester Hills II was rejected because it did not meet the ordinance's guidelines.

In a letter dated May 17, 1989, Trimen's project planner wrote that

> [b]ecause so much of the area within the boundaries of this project is occupied by [native growth protection easements], it is simply not feasible for the developer to dedicate the required amount of recreational open space, and therefore, the developer has elected to pay the "fee in lieu of open space."

In another letter, dated October 6, 1989, Trimen's agent stated:

> *Recommendation No. 29* provides for open space dedication or fee in lieu of open space. Fee in lieu of open space will be provided per King County Code 19.38 prior to final plat recording.

In a subsequent letter, Trimen's project planner wrote that Trimen "has elected to pay the 'fee in-lieu-of open space' for Winchester Hills II."

Upon Trimen's request, a reduction in the fee proposed by the County was granted. The reduced fee for Winchester Hills II was $34,979.38, which was paid without protest. Final approval of the plat was obtained and the plat was recorded on March 14, 1990.

Trimen asserts that King County never identified to Trimen any direct impact of the developments prior to the submission of affidavits in connection with the cross motion

for summary judgment by King County. It further denies that any agreement was ever signed as to use of the park fees, or that any capital improvements were identified or agreed upon prior to payment of the park fees.

The Winchester Hills I files show no specific request by Trimen for details on the method of fund expenditure. A county project administrator submitted an affidavit stating that Trimen never inquired as to what specific capital improvements the fee payments pertaining to Winchester Hills I and II would be applied. Nor did Trimen ask the County to identify the direct impacts on parks created by the proposed subdivisions.

Winchester Hills I funds were ultimately earmarked to be spent for improvements at an existing park within 1 mile of the development. At the time of trial, the project was under way and included development of two tennis courts, based on a county study of specific park needs in that area. Winchester Hills II funds had not been appropriated to a specific project at the time of trial. The ordinance allows the County 3 years to allocate such funds.

PROCEDURAL HISTORY

In June 1990 Trimen filed a claim with the King County Council for return of both the Winchester Hills I and II fees in a total amount of $87,328.75. Subsequently, this action was filed, seeking a declaratory judgment that the ordinance is unlawful and that Trimen is entitled to restitution of the fees. Cross motions for summary judgment were filed.

The County submitted evidence demonstrating a need for parks in the Northshore Planning Area in which the subdivisions at issue are located. Policy guidelines adopted in the 1981 Revised Northshore Community Plan stated that each development should be required to provide recreation space to be deeded to the County in parklike condition for immediate neighborhood use. The 1985 Comprehensive Plan stated that park sites or a fee in lieu thereof should be required in all residential developments, pursuant to KCC 19.38.

The trial court denied Trimen's motion and granted King County's cross motion.

## STATUTE OF LIMITATION

The County affirmatively defends on the grounds that a 30-day limitation period for appeal pursuant to RCW 58.17-.180 applies to Trimen's claims.

RCW 58.17.180 provides that any decision approving or disapproving a plat shall be reviewable for unlawful, arbitrary, capricious or corrupt action by application for a writ of review to the superior court. "Application . . . shall be made . . . within thirty days from any decision so to be reviewed." RCW 58.17.180.

■■ In similar cases, this statute has been held to limit the time period for challenging conditions imposed on plat approvals. *See, e.g., Lechelt v. Seattle,* 32 Wn. App. 831, 834, 650 P.2d 240 (1982), *review denied,* 99 Wn.2d 1005 (1983); *Northwest Land & Inv., Inc. v. Bellingham,* 31 Wn. App. 742, 644 P.2d 740 (1982).

Trimen asserts that a 3-year period is appropriate, citing *Hart v. Clark Cy.,* 52 Wn. App. 113, 758 P.2d 515 (1988). *Hart* held that such a 3-year limitation was appropriate where park development fees were collected pursuant to an invalid ordinance. However, *Hart* involved an action against Clark County to recover void taxes based on a theory of implied contract, a theory not pleaded in this case.

Based upon the positions of the parties in *Hart,* the court was faced with a choice between the 6-year statute of limitation for actions on written contracts and the 3-year statute for actions on unwritten contracts. The court held the 3-year statute of limitation applied. *See Hart,* 52 Wn. App. at 115. The *Hart* court expressly declined to consider whether the 30-day limitation period of RCW 58.17.180 applied, since the issue was not properly before it. *Hart,* 52 Wn. App. at 119. *Hart* is therefore inapposite to our consideration of the application of RCW 58.17.180 herein.

Trimen further argues that its challenge to the imposition of park fees lies under former RCW 82.02.020, rather than RCW 58.17, and thus RCW 58.17.180 cannot apply. However,

KCC 19.38 was enacted in 1981 pursuant to RCW 58.17, and explicitly refers to the requirement in RCW 58.17.110 that local governments provide for parks at the time of subdivision approval. The enactment of RCW 58.17.110 predated the relevant 1982 amendments to RCW 82.02.020 by 13 years.[2] Thus, RCW 58.17.110 provided the original authority for municipalities to require land dedications for park purposes. Such authority was a necessary antecedent to the amendments to RCW 82.02.020. Moreover, the amended version of RCW 82.02.020 expressly referred to RCW 58.17 in allowing dedications of land "pursuant to RCW 58.17.110", *and* voluntary agreements to make payments in lieu thereof or to mitigate identified direct impacts of a proposed development. Former RCW 82.02.020 (amended 1990 to delete the reference to RCW 58.17.110).

Thus, Trimen may be technically correct that at least until the 1990 amendments to RCW 58.17.110, RCW 82.02.020 was the only state statute specifically authorizing park fees. However, the authority to charge such fees was explicitly conditioned on the applicability of RCW 58.17. *See Ivy Club Invs. Ltd. Partnership v. Kennewick,* 40 Wn. App. 524, 530, 699 P.2d 782, *review denied,* 104 Wn.2d 1006 (1985).

---

[2]In 1982, RCW 82.02.020 was substantially amended to provide that municipalities could not impose fees on the development or subdivision of land. The 1982 amendment went on to provide, in relevant part:

However, this section does not preclude dedications of land or easements pursuant to RCW 58.17.110 within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.

This section does not prohibit voluntary agreements with counties, cities, towns, or other municipal corporations that allow a payment in lieu of a dedication of land or to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat[.]

Former RCW 82.02.020 (amended 1990).

The section goes on to provide that any such payments must be held in a reserve account and may only be expended to fund capital improvements "agreed upon by the parties to mitigate the identified, direct impact", that such payments must be expended within 5 years of collection, and that the municipality must establish that the payment is "reasonably necessary as a direct result of the proposed development". RCW 82.02.020.

Furthermore, we have held in the context of claims based on SEPA, which like RCW 82.02.020 has no express mechanism for appeal, that where a statute without an express mechanism for appeal overlays and supplements existing authority, a claim based on the supplemental authority must adhere to the statutory framework provided for challenging the underlying governmental action. *See Asarco Inc. v. Air Quality Coalition*, 92 Wn.2d 685, 693-95, 601 P.2d 501 (1979); *State v. Brannan*, 85 Wn.2d 64, 71, 530 P.2d 322 (1975); *South Hollywood Hills Citizens Ass'n v. King Cy.*, 33 Wn. App. 169, 173, 653 P.2d 1324 (1982) (SEPA claims under RCW 43.21C must be brought within 30-day appeal period of RCW 58.17.180), *rev'd in part on other grounds*, 101 Wn.2d 68, 78, 677 P.2d 114 (1984). Similarly in this case, procedures for challenges to the underlying governmental action and approval or disapproval of subdivisions and plats are provided in RCW 58.17.180. Hence, that is the framework which controls claims based on the supplemental authority of RCW 82.02.020, which has no express mechanism for appeal.

Each of the claims Trimen now raises could have been made within 30 days of the plat approval. If Trimen had sought review within 30 days, the County could have opted to be more flexible with regard to negotiating a solution acceptable to Trimen. The County had already shown flexibility in reducing the amount of the fees. If Trimen had specific questions or objections with regard to the direct impact of its subdivisions or the need for particular types of capital improvements, the County would have been in a better position at that time to negotiate such items. At this point, the opportunity to reach an agreement on these items has essentially been lost. For example, the fee collected in connection with Winchester Hills I has already been allocated to the development of tennis courts.

It is impractical and clearly unfair to allow an action seeking reimbursement to be brought 3 years into the 5-year period within which the funds must be expended under RCW 82.02.020. At that point, a prudent municipality would be likely to have made decisions and commitments regarding the

expenditure of such funds. *See Crystal Green v. Crystal*, 421 N.W.2d 393, 395 (Minn. Ct. App. 1988) (where dedication was required as a condition of plat approval, developer must challenge reasonableness prior to filing of final plat in order to give City an opportunity to change requirements if unreasonable, and to prevent City from being sued by developer when the only remedy available is payment), *review denied* (May 1988). Application of the 30-day limitation period in RCW 58.17.180 thus promotes the rational, orderly planning of parks.

■ Finally, to apply a 3-year statute of limitation would be inconsistent with the policy favoring finality in land use decisions, *see Deschenes v. King Cy.*, 83 Wn.2d 714, 717, 521 P.2d 1181 (1974), which RCW 58.17.180 is designed to serve. *Veradale Vly. Citizens' Planning Comm. v. Board of Cy. Comm'rs*, 22 Wn. App. 229, 239, 588 P.2d 750 (1978). This policy benefits municipalities by enabling them to plan for parks and other municipal services necessitated by growth, and landowners by permitting them to proceed with the timely development of their properties. *See Veradale.*

In conclusion, we hold that the 30-day statute of limitation under RCW 58.17.180 bars Trimen's claims herein.

ESTOPPEL

■ King County additionally asserts the defense of estoppel, the elements of which are: (1) an act inconsistent with a claim afterward asserted; (2) action by another in reliance upon that act; and (3) injury to the relying party. *Board of Regents v. Seattle*, 108 Wn.2d 545, 551, 741 P.2d 11 (1987).

Trimen asserts that its failure to resist imposition of the park fee in any way except to negotiate a reduction of the amount is not inconsistent with the claims asserted herein, since it merely demonstrates an intention to avoid the economic losses that would have accompanied further delays. It claims it paid the fee only under duress.

■ However, when evaluating the County's estoppel defense, our focus must be both on the substantial economic benefit accorded to Trimen by approval of its plats and on

the irretrievable change of position imposed thereby on the County. We cannot countenance allowing a developer to reap the advantages of final plat approval obtained without challenge to the approval conditions, and only bring a challenge to those conditions after the municipality has lost any ability to negotiate a solution to the problem other than refund of the fee.

■ Trimen further argues that estoppel has no application in a challenge to a wholly or absolutely void assessment. *Port of Peninsula v. Bendiksen*, 71 Wn.2d 530, 534, 429 P.2d 859 (1967). Here, however, the County did have the fundamental authority under RCW 58.17.110 to require of this developer dedications of land or, under RCW 82.02.020, fees in lieu thereof. Thus, this was not a wholly void assessment, unlike the circumstances in *Ivy Club*, 40 Wn. App. at 527, 531, where an estoppel defense was rejected. Nor does Trimen's citation to *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 650 P.2d 193 (1982) support its arguments against estoppel. There, a landowner was allowed to recover illegally exacted fees paid without protest because the County refused to process the application unless the fee was paid. *Hillis*, 97 Wn.2d at 806-07. King County did not refuse to process these applications, and the fee issue arose at the election of the landowner as an alternative to land dedication.

■ Trimen's particular attacks to the local ordinance revolve around allegations that it had not been appropriately amended in response to the 1982 amendments to RCW 82.02.020 and subsequent case law. While that may have been the case, Trimen was presumably as aware as the County of those legal developments. If it believed the County was violating the law by following its procedures, it could and should have raised such concerns in a timely fashion. For example, if arguments concerning the need to identify direct impacts had been cogently made at the time of the pending plat approvals, the County would have had the opportunity to examine and demonstrate such impacts.

The County may indeed at that time have shown a flexibility in negotiating agreed capital improvements or in identifying direct impacts, similar to the flexibility it demonstrated in reducing the impact fees. Giving the County no alternative now but to refund the fees would inequitably grant a benefit to Trimen at the expense of the County. Thus, we conclude that Trimen's claims are also barred by estoppel.

CONCLUSION

We hold that Trimen's claims are barred by the expiration of the statute of limitations and by estoppel.[3]
Affirmed.

WEBSTER, A.C.J., and PEKELIS, J., concur.

Review granted at 120 Wn.2d 1001 (1992).

---

[3]Although the trial court ruled on the merits of the case, stating that its order "resolves the legality of Ordinance No. 5596, [KCC 19.38]" this court may uphold the judgment on any theory established by the pleadings and supported by the proof. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027, *cert. denied*, 493 U.S. 814 (1989). The affirmative defenses upon which this opinion is based were raised by the County in its answer and are supported by the proof herein.