[No. 27951-3-I. Division One. October 19, 1992.]

VIEW RIDGE PARK ASSOCIATES, ET AL, *Appellants,* v.
MOUNTLAKE TERRACE, *Respondent.*

*Richard Sanders* and *Sanders Law Office,* for appellants.

*Gregory G. Schrag, City Attorney; Levy S. Johnston* and *Johnston & Neal Inc. P.S.,* for respondent.

WEBSTER, A.C.J. — View Ridge Park Associates (View Ridge) and Hillcrest Park Associates (Hillcrest) appeal a trial court decision awarding them partial recovery against the Municipality of Mountlake Terrace (the City). The trial

court held that Mountlake Terrace could not require View Ridge and Hillcrest to reimburse it for sidewalk construction along its property. In addition, the trial court upheld the City's ordinance requiring onsite recreational facilities in multiple-residence developments, but invalidated the ordinance's provision permitting acceptance of a cash payment in lieu of onsite recreational facilities. On reconsideration, the trial court determined that the onsite recreational facility ordinance was entirely valid on its face, but was invalidly applied when the City permitted View Ridge to substitute additional landscaping for onsite recreational facilities. View Ridge and Hillcrest contend that the recreational fee ordinance is facially invalid under several theories and that they are entitled to attorney's fees. The City cross-appeals, asserting that it had authority to require the sidewalk payments and that the trial court incorrectly determined the amount of View Ridge's recreational assessment. We affirm in part and reverse in part.

## FACTS

View Ridge Park Associates and Hillcrest Park Associates are general partnerships which owned and constructed adjacent apartment houses in Mountlake Terrace on 220th Street S.W. Hillcrest, a 13-unit apartment complex, was built in 1987. View Ridge, a 27-unit townhouse project, was completed in 1989.

In 1986, Mountlake Terrace used state, federal, and local improvement district funds to construct sidewalks along 220th Street S.W. The sidewalks were constructed "prior, and without regard, to the subsequent acquisition and improvement" of the View Ridge and Hillcrest properties. As a condition of building permit approval, View Ridge and Hillcrest were required to reimburse the City for the proportionate cost of the sidewalk construction bordering their properties. Hillcrest paid $1,672.33, and View Ridge paid $2,200.87. Mountlake Terrace also required compliance with its local zoning ordinances, including Mountlake Terrace Ordinance (MTO) 3.3.7 entitled "Recreation Requirements".

The ordinance required developers to construct onsite recreational facilities in multiple-unit developments. For projects ranging from 10 to 59 units, the ordinance required the developer to install facilities having a minimum value of 3 percent of the project cost. MTO 3.3.7(B)(1). The ordinance also authorized the City to accept, upon the request of the developer, cash payments for use in developing or expanding public recreational lands as a full or partial alternative to the onsite recreational facility requirement.

Hillcrest eventually satisfied the ordinance by installing a $10,500 "sports court". The recreational facility cost for View Ridge, as calculated by the City using a standard square foot construction cost estimate, totaled $35,166.54. Because of site restrictions, View Ridge asked the City for permission to credit additional landscaping against the recreational facility cost. The City Council approved this exchange on March 21, 1989, and View Ridge was credited $19,000 for the additional landscaping. The City subsequently agreed, at View Ridge's suggestion, to accept a cash payment for $16,008.54 in lieu of the remaining recreational assessment.

View Ridge, however, did not pay the $16,008.54 and instead filed suit against the City. Hillcrest joined View Ridge in the litigation. Each plaintiff sought recovery of the sidewalk reimbursement fees and amounts expended to comply with the recreational facility ordinance. The court issued a preliminary injunction prohibiting Mountlake Terrace from enforcing the recreational facility ordinance against View Ridge, and View Ridge deposited a $16,008.54 cash bond with the court. After a bench trial, the court ruled that View Ridge and Hillcrest were entitled to recover the sidewalk reimbursement fees. Furthermore, the court held that the recreational facility ordinance was valid only as to recreational facilities constructed on site. It thus denied Hillcrest reimbursement for the value of the sports court, but awarded View Ridge reimbursement for the landscaping and return of the $16,008.54 cash bond deposited with the

court. The court also awarded View Ridge and Hillcrest reasonable attorney's fees in connection with the claims upon which they prevailed.

The City filed a motion for reconsideration, based in part on its discovery that View Ridge sold its property just before trial and its assertion that the additional landscaping increased the property's value. On reconsideration, the trial court adhered to its holding regarding the sidewalk reimbursement fees, but modified its ruling regarding the recreational facility ordinance, holding that the ordinance was valid on its face. The court ruled that the agreement to substitute additional landscaping for onsite recreational facilities lay outside the statutory restrictions imposed by RCW 82.02.020, but that the $19,000 View Ridge spent on additional landscaping would be credited toward View Ridge's recreational facility obligation rather than reimbursed. The court then calculated the recreational facility cost using View Ridge's actual cost figures rather than the estimate used by the City, and concluded that the amount of View Ridge's recreational facility obligation was $24,193.85.[1] The court also denied View Ridge and Hillcrest any award for reasonable attorney's fees.

## DISCUSSION

■ We first discuss the validity of Mountlake Terrace's recreational facility ordinance. In 1982, the Legislature amended RCW 82.02.020 by adding provisions detailing the circumstances under which municipalities may impose conditions on development. Those provisions state in relevant part:

> No county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on the construction or reconstruction of residential buildings . . . or on any . . . appurtenance thereto, or on the development, subdivision, classification, or reclassification of land. However, this section does not preclude dedications of land or easements

---

[1] As a logical outcome of the trial court's findings of fact and conclusions of law on reconsideration, the City should have received as a judgment the difference between View Ridge's recreational facility obligation and the credit for landscaping, pursuant to the agreement between the parties. The judgment on reconsideration does not reflect that this difference was taken into account.

pursuant to RCW 58.17.110 within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.

This section does not prohibit voluntary agreements with counties, cities, towns, or other municipal corporations that allow a payment in lieu of a dedication of land or to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat: PROVIDED, That any such voluntary agreement shall be subject to the following provisions:

(1) The payment shall be held in a reserve account and may only be expended to fund a capital improvement agreed upon by the parties to mitigate the identified, direct impact;

(2) The payment shall be expended in all cases within five years of collection; and

(3) Any payment not so expended shall be refunded with interest at the rate applied to judgments to the property owners of record at the time of the refund; however, if the payment is not expended within five years due to delay attributable to the developer, the payment shall be refunded without interest.

No county, city, town, or other municipal corporation shall require any payment as part of such a voluntary agreement which the county, city, town, or other municipal corporation cannot establish is reasonably necessary as a direct result of the proposed development or plat.

Laws of 1982, 1st Ex. Sess., ch. 49, § 5. Prior to the 1982 amendments, Washington courts focused on whether a fee or payment imposed constituted an unauthorized tax, or a valid regulatory scheme. *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 809, 650 P.2d 193 (1982). Following the 1982 amendments, however, "an application of *Hillis Homes'* tax/regulation distinction is not necessary since regardless of whether a payment is characterized as a tax or a regulatory fee, it is prohibited unless specifically excepted." *R/L Assocs., Inc. v. Seattle*, 113 Wn.2d 402, 409, 780 P.2d 838 (1989); *see Cobb v. Snohomish Cy.*, 64 Wn. App. 451, 456-57, 829 P.2d 169 (1991), *review denied*, 119 Wn.2d 1012 (1992). Therefore, under RCW 82.02.020, the first inquiry is whether the condition imposed by the municipality is a "tax, fee, or charge, whether direct or indirect" on residential development. *See Southwick, Inc. v. Lacey,* 58 Wn. App. 886, 890-91, 795 P.2d

712 (1990). If the condition is not a tax, fee or charge, either direct or indirect, then the condition will be upheld if it is a valid exercise of the municipality's police powers. *See Tekoa Constr., Inc. v. Seattle,* 56 Wn. App. 28, 34, 781 P.2d 1324 (1989), *review denied,* 114 Wn.2d 1005 (1990); *Duckworth v. Bonney Lk.,* 91 Wn.2d 19, 34, 586 P.2d 860 (1978) (municipal zoning ordinances will be upheld as valid exercises of police power if they promote the public health, safety, or welfare, and bear a reasonable and substantial relation to accomplishing the purpose pursued). If the condition imposed on residential development is a tax, fee, or charge, either direct or indirect, then it is invalid unless it falls under one of the exceptions specified in RCW 82.02.020. The exceptions in effect when the City approved the developments at issue were: (1) "dedications of land or easements pursuant to RCW 58.17.110 within the proposed development or plat which [the municipality] can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply"; (2) voluntary agreements allowing "payment in lieu of a dedication of land" which the municipal corporation can establish are "reasonably necessary as a direct result of the proposed development or plat"; and (3) voluntary agreements allowing "payment . . . to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat" which the municipal corporation can establish are "reasonably necessary as a direct result of the proposed development or plat". Laws of 1982, 1st Ex. Sess., ch. 49, § 5, *amended by* Laws of 1987, ch. 327, § 17; Laws of 1988, ch. 179, § 6. The 1987 amendment did not affect the provisions added in 1982; however, the 1990 amendments created exceptions set forth in RCW 82.02.050 through 82.02.090 for the imposition of "impact fees". Since the actions forming the basis of this lawsuit occurred before 1990, the provisions added in 1990 do not apply.

Mountlake Terrace's zoning ordinance states:

Section 3.3.7. Recreation Requirements.
A. Objectives of recreation requirements:

1. To require the developer to satisfy a portion of the demand for recreational facilities that are created by the increased population and population density associated with development of the project.

2. To develop recreational improvements that relate to the physical scale and clientele of such project;

3. To develop recreational improvements that are responsive to the physical attributes and limitations of the property;

4. To require the physical construction of recreational facilities on the site on which the development is occurring, PROVIDED that, upon written request of the developer, the City may consider as a partial or full alternative to on-site provision of recreational facilities, acceptance of a cash amount equal to the amount which would otherwise be programmed for on-site amenities. Proposal for use of this alternative shall be at the sole option of the developer, and acceptance or rejection of the proposal shall be the sole option of the City. Any such funds accepted by the City shall be utilized toward the development or expansion of public recreational lands or facilities in conformance with the comprehensive plan for such services.

Hillcrest and View Ridge contend that the City's recreational facility ordinance is invalid on its face. They assert the ordinance betrays itself as a tax rather than a regulatory tool, because one of its stated purposes is to "require the developer to satisfy a portion of the demand for recreational facilities that are created by the increased population and population density associated with" the development, and because it states that cash fees received in lieu of facilities will be used toward developing or improving "public" recreational lands or facilities.

■ To determine whether a condition imposed on development is a tax, courts have sought to ascertain the primary purpose of the fee. *Hillis*, at 809. " '[I]f the primary purpose of legislation is regulation rather than raising revenue, the legislation cannot be classified as a tax even if a burden or charge is imposed.' " *Hillis*, at 809 (quoting *Spokane v. Spokane Police Guild*, 87 Wn.2d 457, 461, 553 P.2d 1316 (1976)). On the other hand, if the primary purpose of the fees is to raise money, the fees must be treated as taxes. *Hillis*, at 809. In *Hillis*, the court concluded that fees having no regulatory features, which were imposed on new properties to offset the costs of providing additional services as a result of the

developments, were taxes requiring express legislative authorization. *Hillis,* at 810.

■ Read as a whole, the thrust of Mountlake Terrace's recreational facility ordinance is regulatory. Moreover, the ordinance does not compel payment of fees for general public purposes, but states that the developer may volunteer to pay cash to be applied to public recreational lands or facilities in lieu of making recreational improvements on the developed property. Since the condition is directly tied to the property, we conclude that it is not a tax.[2] *Southwick, Inc. v. Lacey, supra* at 890.

■ Although the ordinance is not a tax, it is nevertheless subject to RCW 82.02.020 if it comprises a fee or charge. Because the recreational facility ordinance facially requires a monetary expenditure calculated based upon a percentage of the cost of constructing the dwelling units, we believe the ordinance indirectly imposes a fee or charge. The ordinance at issue in this case therefore is distinct from the ordinances at issue in *Southwick,* which the court concluded were not fees or charges under RCW 82.02.020. *See Southwick,* at 891-93. Therefore, the ordinance is invalid unless it satisfies one of the exceptions set forth in RCW 82.02.020.

■ The City claims, and we agree, that its ordinance falls under the "direct impact" exception: *i.e.,* that the payment in lieu of a facility is a "payment . . . to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat".

The question becomes whether the payment has to be a voluntary payment in lieu of a required mitigation or can be extracted as a condition of rezone approval. We find, based on

---

[2]If the condition imposed is a tax, it is invalid under RCW 82.02.020, since the exceptions found in RCW 82.02.020 cannot be construed as granting municipalities any taxing power. *See Ivy Club Investors Ltd. Partnership v. Kennewick,* 40 Wn. App. 524, 528, 699 P.2d 782 (grants of taxing authority are strictly construed), *review denied,* 104 Wn.2d 1006 (1985); *Hillis,* at 810-11 (RCW 58.17-.110 does not grant municipalities any taxing authority). *See also* Comment, *Subdivision Exactions in Washington: The Controversy Over Imposing Fees on Developers,* 59 Wash. L. Rev. 289, 297 n.54 (1983-1984).

the language of the statute, that with regard to dedications of land, a voluntary payment only *in lieu* of dedication is permissible, while with mitigations, the fee can be required as a condition of approval and does not have to be in lieu of anything (so long as it is shown to mitigate a direct impact of the proposed subdivision).

As to the meaning of the "has been identified" as a consequence of proposed development language, the 1990 amendments to RCW 82.02.020 only recognize mitigations that have been adopted pursuant to the City's SEPA (State Environmental Policy Act of 1971) powers, or at least only those that are codified, as opposed to those being raised for the first time at the City Council meeting at which the rezone is debated. Here, the ordinance was on the books and could easily be construed as a measure taken "to mitigate a direct impact that has been identified as a consequence of a proposed development".

We next address the City's assertion that View Ridge is not entitled to a credit of $19,000 against its recreational facility obligation. The City contends that since the idea to substitute additional landscaping in lieu of onsite recreational facilities was proposed by View Ridge, the City is not bound by its agreement to credit the landscaping against the amount of View Ridge's recreational facility obligation. We hold that the City is estopped from asserting that it is not bound by the agreement. *See Emrich v. Connell*, 105 Wn.2d 551, 559, 716 P.2d 863 (1986).[3]

We next address whether the City's application of its recreational facility ordinance violated View Ridge's or Hillcrest's right to substantive due process. The remedy for a violation of substantive due process is invalidation of the statute or ordinance. *Presbytery of Seattle v. King Cy.*, 114 Wn.2d 320, 332, 787 P.2d 907, *cert. denied*, 112 L. Ed. 2d 238 (1990).

---

[3]The fact that View Ridge might have recouped the amount spent on the additional landscaping when it subsequently sold the property is entirely irrelevant.

> If the regulation is not aimed at a legitimate public purpose, or uses a means which does not tend to achieve it, or if it unduly oppresses the landowner, then the ordinance will be struck down as violative of due process and the remedy is invalidation of the regulation.

*Presbytery of Seattle*, at 331-32. Hillcrest's and View Ridge's substantive due process argument rests on the premise that the ordinance exceeds the City's police power because it violates RCW 82.02.020. We have already determined that the recreational facility ordinance is a regulation rather than a fiscal device, and that the ordinance on its face does not violate RCW 82.02.020. See pages 598-99. Although the agreement to substitute additional landscaping in lieu of onsite recreational facilities was an invalid application of the ordinance, the ordinance on its face is sufficiently tailored to the objective of providing recreational facilities for the inhabitants of new developments. Furthermore, we find nothing in the ordinance that is "unduly oppressive" on the landowner. *Presbytery*, at 331. We therefore reject View Ridge's and Hillcrest's substantive due process argument.

■ View Ridge also asserts that application of the recreational facility ordinance to its property constituted a taking of property without just compensation in violation of the Fifth and Fourteenth Amendments and Const. art. 1, § 16 (amend. 9). *See Presbytery*, at 333. The remedy for a "takings" claim is compensation. *Presbytery*, at 336. In evaluating a takings claim, the parcel of regulated property must be viewed in its entirety. *Presbytery*, at 334. Although the City's acceptance of View Ridge's proposal to substitute landscaping for onsite recreational facilities may have constituted an invalid application of the recreational facility ordinance, View Ridge has failed to demonstrate that implementing the landscaping agreement reduced the value of its properties or interfered with its "investment-backed expectations". *Presbytery*, at 335-36; *see Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497-98, 94 L. Ed. 2d 472, 107 S. Ct. 1232 (1987), *cited in Presbytery*, at 333 n.23. We therefore find this argument meritless.

We next address whether the trial court erred in determining the value of the View Ridge properties for purposes of calculating the amount of the recreational facility cost. The City contends that the trial court erred in using View Ridge's figure of $24,193.85 as opposed to the City's figure of $35,166.54 for determining the amount of the fee under the City's recreational ordinance. View Ridge derived its figure based on actual cost, not including the cost of building permits, grading, foundation, or backfill. The City calculated the value of the structures using a building evaluation data chart published by the International Conference of Building Officials (the chart). When View Ridge's attorney cross-examined the City's witness, Mr. De Mars, De Mars admitted that profit was included in the chart's price-per-square-foot cost, that he did not know the particular construction components upon which the cost figures were based, and that he believed all costs for the building, including permit costs, were included components. View Ridge objected to the City's use of its building valuation data sheet because the City did not lay a foundation showing that the sheet "complied consistently with the criteria as set forth in the ordinance."

The ordinance governing calculation of the recreational facility cost states:

**B. Minimum Recreational Requirements.**

. . . .

The cost figures for project value shall include the developer's estimated cost of all dwelling unit structures and shall not include the purchase price of the land, utility or street improvements[,] on or off site land preparation costs or lands or structures to be deeded to the City. Value of structures shall be determined by the applicant[']s submittal of a price per square foot value for construction of the units. This value shall be subject to conformation by the City Building Department. In any case the higher cost figure shall apply to the determination of recreation investment.

MTO 3.3.7(B)(1). We agree with Mountlake Terrace that the ordinance provides that the City's cost figure shall apply if it is higher than the cost figure submitted by the developer.

However, the ordinance also states that the price is based on the "cost of all dwelling unit structures", not including "preparation costs". The ordinance does not indicate whether the "cost of all dwelling unit structures" includes profit, the price of the building permits, grading, foundation, or backfill. "Cost" could be reasonably interpreted as "actual cost". Furthermore, "preparation costs", which are excluded, arguably include grading, foundation, and backfill. The City has failed to demonstrate that the trial court erred in using View Ridge's figure for determining the amount of the recreational facility cost.

█ The City asserts that the trial court erred in requiring Mountlake Terrace to refund payments made by View Ridge and Hillcrest for sidewalk construction. Although the City assigned error to the trial court's conclusion that the sidewalk reimbursements were unauthorized, it did not support its argument with any recognizable legal theory or citations to legal authority. We therefore decline to discuss this issue. RAP 10.3(a)(5); *Cyrus v. Martin*, 64 Wn.2d 810, 813, 394 P.2d 369 (1964). *See also Kane v. Smith*, 56 Wn.2d 799, 806, 355 P.2d 827, 84 A.L.R.2d 660 (1960) (party asserting that the trial court committed an error has the burden of demonstrating on appeal that it is entitled to the relief requested).

Lastly, we address whether View Ridge and Hillcrest are entitled to reasonable attorney's fees in connection with the trial court's judgment reimbursing them for sidewalk construction. Hillcrest and View Ridge assert that the trial court erred in reversing on reconsideration their award of attorney's fees pursuant to 42 U.S.C. § 1988, RCW 64.40-.020 and RCW 8.25.075. The trial court reversed the attorney's fee award based on modifications to its judgment regarding the recreational facility ordinance, and apparently did not intend to reverse the award as it pertained to appellants' recovery of the payments for sidewalk construction.

RCW 64.40.020 provides in relevant part:

(1) Owners of a property interest who have filed an application for a permit have an action for damages to obtain relief

from acts of an agency which are arbitrary, capricious, unlawful, or exceed lawful authority, or relief from a failure to act within time limits established by law: PROVIDED, That the action is unlawful or in excess of lawful authority only if the final decision of the agency was made with knowledge of its unlawfulness or that it was in excess of lawful authority, or it should reasonably have been known to have been unlawful or in excess of lawful authority.

(2) The prevailing party in an action brought pursuant to this chapter may be entitled to reasonable costs and attorney's fees.

In *Ivy Club Investors Ltd. Partnership v. Kennewick*, 40 Wn. App. 524, 699 P.2d 782, *review denied*, 104 Wn.2d 1006 (1985), the court found that the imposition of a park fee which was not voluntary constituted an "act" for purposes of RCW 64.40, and that the planning director knew that the City "was aware of its tenuous authority to impose the fee" under RCW 64.40.020(1). *Ivy Club Investors*, at 531.

■ In the instant case, the act of requiring the payment of the sidewalk fees is also an act under RCW 64.40.020, which the City should have known was unlawful pursuant to RCW 82.02.020. Hillcrest and View Ridge therefore are entitled to reasonable attorney's fees in connection with the litigation over the sidewalk reimbursements.[4]

■ Hillcrest and View Ridge also assert they are entitled to reasonable attorney's fees under 42 U.S.C. §§ 1983 and 1988 in connection with the litigation concerning the recreational facility ordinance, because the City unconstitutionally executed or implemented the ordinances. Since we have rejected View Ridge's assertion that the landscaping substitution violated its federal constitutional rights, see *supra*, View Ridge is not entitled to attorney's fees under 42 U.S.C. §§ 1983 and 1988.[5]

---

[4]Since View Ridge proposed the landscaping agreement to the City Council, indicating that it may not have been aware of the law, we hold that it is estopped from asserting that it is entitled to an award of attorney's fees under RCW 64.40.020 in connection with the additional landscaping fees.

[5]We also reject Hillcrest's and View Ridge's argument that they are entitled to attorney's fees pursuant to RCW 8.25.075, to defend against an improper condemnation.

The judgment is affirmed, except for that portion of the judgment denying View Ridge and Hillcrest reasonable attorney's fees in connection with the sidewalk reimbursement fees, which is reversed. The trial court is further instructed to correct the judgment to reflect that the City is entitled to a judgment of $5,193.85 against View Ridge, which shall be offset by View Ridge's April 10, 1990, judgment against the City in the amount of $2,618.84 plus prejudgment interest of $519.

PEKELIS and BAKER, JJ., concur.

Reconsideration denied November 18, 1992.

Review denied at 121 Wn.2d 1016 (1993).