[No. 59452-0.    En Banc.    July 21, 1994.]

TRIMEN DEVELOPMENT COMPANY, *Petitioner*, v. KING COUNTY, *Respondent*.

*Cairncross & Hempelmann, P.S.,* by *John W. Hempelmann, Janice Sue Wang,* and *Janet E. Garrow,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Charles Maduell, Senior Deputy,* for respondent.

GUY, J. — Petitioner Trimen Development Company seeks review of a Court of Appeals decision affirming a summary judgment in favor of King County. Trimen seeks a refund of the park development fees it paid pursuant to King County Code (KCC) 19.38. Trimen claims that KCC 19.38, which conditions subdivision plat approval upon the dedication or reservation of land for open space or upon the payment of a fee in lieu of such dedication or reservation, is an invalid "tax" in violation of former RCW 82.02.020. We affirm the Court of Appeals.

## BACKGROUND

In 1981, pursuant to former RCW 58.17.110,[1] the King County Council enacted ordinance 5596,[2] finding that King County had a "general and increasing need for parks, open spaces and recreational facilities to serve the expanding population of the County." Clerk's Papers, at 46. The Council found that the need for such open space was acute at the neighborhood level due to population increases from subdivisions. Two of the stated purposes of the ordinance are: (1) to distribute equitably the cost of providing such parks, open

---

[1]Former RCW 58.17.110 provided in relevant part:

"The city, town, or county legislative body shall inquire into the public use and interest proposed to be served by the establishment of the subdivision and dedication. It shall determine if appropriate provisions are made for, but not limited to, the public health, safety, and general welfare, for open spaces, drainage ways, streets, alleys, other public ways . . . parks, playgrounds, sites for schools and schoolgrounds . . . Dedication of land to any public body, may be required as a condition of subdivision approval and shall be clearly shown on the final plat." Laws of 1974, 1st Ex. Sess., ch. 134, § 5. Our citations to RCW 58.17.110 throughout this opinion refer to the statute in effect at all times relevant to the action before us.

As amended in 1990, RCW 58.17.110(2) provides in relevant part:

"Dedication of land to any public body, provision of public improvements to serve the subdivision, and/or impact fees imposed under [RCW 82.02.050 through RCW 82.02.090] may be required as a condition of subdivision approval. . . . No dedication, provision of public improvements, or impact fees imposed under [RCW 82.02.050 through RCW 82.02.090] shall be allowed that constitutes an unconstitutional taking of private property." Laws of 1990, 1st Ex. Sess., ch. 17, § 52. Since the actions forming the basis of this lawsuit occurred before 1990, the amended provisions do not apply.

[2]*See* KCC 19.38.010(A)(3). King County Ordinance 5596 was codified as King County Code (KCC) 19.38.

spaces and recreational facilities, and (2) to mitigate any adverse impacts on neighborhoods without adequate parks, open spaces and recreational facilities when approving new residential development.

The King County ordinance provides in part:

> Every Subdivision final approval . . . shall be contingent upon reservation or dedication of land for the open space and recreational needs of its residents *or* payment of a fee-in-lieu thereof. The developer may either reserve or dedicate land, or make payment of a fee-in-lieu thereof pursuant to this chapter.

(Italics ours.) Clerk's Papers, at 71 (KCC 19.38.020). If the developer chooses to dedicate or reserve land, the dedication must be within the subdivision's "park service area". KCC 19.38 defines the "park service area" as an area roughly approximate to elementary school boundaries, within which reservation or dedication of land and fees are received and used for the benefit of residents within that area. The amount of land to be reserved or dedicated is determined by a formula which considers the gross land area of the proposed subdivision and the zone of the area. The County's review of the documents for Trimen's subdivisions indicated that there was sufficient flat, dry, and obstacle-free space available for onsite dedication.

The developer may instead pay a fee in lieu of dedication or reservation:

> Unless land within a proposed subdivision is dedicated or reserved . . . final approval of the subdivision shall be contingent upon payment of a park development fee from the developer to King County.

Clerk's Papers, at 73 (KCC 19.38.070). The fee is calculated based on the assessed value of the equivalent amount of land that would have been reserved or dedicated. KCC 19.38.080. The collected fee must be appropriated only for the acquisition and development of open space, park sites, and recreational facilities within the park service area where the proposed subdivision is located. KCC 19.38.070. The collected fee must be allocated to a particular project within 3 years of fee acceptance. KCC 19.38.070.

## Trimen's Proposed Developments

Trimen owns two parcels of land in northeast King County. In February 1987 and March 1988, Trimen submitted applications for subdivision approval for two developments known as Winchester Hills I and II, respectively. In Winchester Hills I, Trimen proposed to subdivide 21 acres into 77 lots for detached family homes. In Winchester Hills II, Trimen proposed to divide 22 acres into 41 lots.

Trimen submitted applications to the King County Building and Land Development Division (BALD) for preliminary approval of the Winchester Hills I and II subdivisions. BALD is the agency responsible for reviewing and processing preliminary plat applications. BALD reviews each application and subsequently makes a report and recommendation to the King County zoning and subdivision examiner, who in turn holds a public hearing on the plat application and makes a recommendation to the King County Council. The King County Council makes the final decision on whether to approve, approve with conditions, or deny a preliminary plat application.

Once an applicant obtains preliminary approval, the applicant can proceed to final approval of the plat. During this stage, BALD reviews the plat for compliance with the conditions for preliminary approval, including whether the applicant has decided to provide open space by dedication or reservation, or to pay a fee in lieu of such dedication or reservation pursuant to ordinance 5596 (KCC 19.38). Once the conditions are satisfied and final approvals are obtained, the final plat can be recorded. The Council takes final action by ordinance.

King County approved Trimen's preliminary plat of Winchester Hills I on the condition that Trimen

> comply with KCC 19.38 regarding the provision of common open space with the subdivision or payment of a fee-in-lieu of open space dedication. If open space is provided an open space plan must be submitted for review and approval by BALD.

Clerk's Papers, at 166. Trimen did not object to or appeal this condition. Based on the ordinance, Winchester Hills I

required a dedication or reservation of approximately 1.08 acres of land, or three to six lots within the subdivision. Trimen subsequently proposed an open space plan that provided a hiking trail and park area within the Winchester Hills I subdivision. King County rejected this proposal because it did not meet the ordinance's criteria for dedication/reservation of land. Trimen did not pursue its option to dedicate or reserve open space and instead opted to pay the fee in lieu of providing open space. Trimen proposed a recalculation of the fee in lieu of dedication that reduced the fee from the level suggested by the County. The County accepted Trimen's recalculated fee. Trimen subsequently paid the $52,349.37 fee without protest and obtained final approval of the Winchester Hills I plat, which was recorded on September 27, 1988.

In March 1988, Trimen submitted its application for preliminary approval of the Winchester Hills II plat. At the time when the Winchester Hills II plat was being processed by BALD, applicants were required to show the open space to be dedicated or reserved pursuant to KCC 19.38 on the face of the plans. Based on the ordinance, Winchester Hills II required a dedication or reservation of approximately 1.016 acres, or three to six lots within that subdivision. Because Trimen did not show any open space on the submitted plans, BALD assumed that Trimen had elected to pay a fee in lieu of dedication. Consequently, when the County approved Trimen's preliminary plan for Winchester Hills II, it did so on the condition that Trimen "comply with K.C.C. 19.38 by paying a fee to the Parks Division in-lieu-of providing onsite open space." Clerk's Papers, at 101. Although BALD had assumed that Trimen had elected to pay the fee in lieu of open space and had recommended payment as a condition of plat approval, the record indicates that Trimen could have changed its mind and elected to dedicate open space at any time prior to final plat approval. Instead, Trimen elected to pay the fee in lieu of dedicating open space. Again, at Trimen's request, the fee was reduced. Trimen paid the $34,979.38 fee without protest and was granted final approval of the plat. The plat was recorded in March 1990.

In August 1990, Trimen filed this action challenging King County's "park fee ordinance" and seeking restitution of the fees it paid. Trimen moved, and King County cross-moved, for summary judgment. The trial court granted King County's motion, upheld the legality of ordinance 5596 (KCC 19.38), and entered final judgment in favor of the County. Trimen appealed directly to this court, which transferred the case to the Court of Appeals. The Court of Appeals affirmed the judgment, holding that Trimen's claims are barred by the expiration of the 30-day statute of limitation under RCW 58.17.180, and by estoppel.[3] *Trimen Dev. Co. v. King Cy.*, 65 Wn. App. 692, 703, 829 P.2d 226 (1992). We granted Trimen's petition for review and now affirm the Court of Appeals.

## ISSUE

The central issue before us is whether King County lawfully imposed park development fees under former RCW 82.02.020.[4] We conclude that King County, through KCC 19.38, did assess lawful park development fees as a condition of plat approval. Furthermore, we hold that King County complied fully with the requirements for a voluntary agreement for payments "in lieu of a dedication of land or to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat." RCW 82.02.020. Finally, we conclude a 3-year statute of limitations governs Trimen's claims.

## ANALYSIS
## KCC 19.38

Trimen challenges the legality of KCC 19.38, arguing that the ordinance conditions the approval of a plat on the pay-

---

[3]The Court of Appeals did not reach the merits of Trimen's claim. The court instead upheld the trial court's judgment based on the affirmative defenses raised in King County's answer. *Trimen Dev. Co. v. King Cy.*, 65 Wn. App. 692, 703 n.3, 829 P.2d 226 (1992).

[4]The 1982 version of RCW 82.02.020 applies to this action. RCW 82.02.020 was amended in 1990. Laws of 1990, 1st Ex. Sess., ch. 17, § 42. The new version of the statute provides authority and guidance for municipalities to impose impact fees. *See* RCW 82.02.020, .050-.090. The citations to RCW 82.02.020 throughout this opinion refer to the statute as amended in 1982.

ment of a fee. Trimen urges this court to declare KCC 19.38 an unauthorized tax, invalid on its face under RCW 82.02.020. We decline to do so.

■ KCC 19.38 permits no more than RCW 82.02.020 authorizes. A local ordinance conflicts with the general law when the ordinance permits that which the statute forbids, or forbids that which the statute allows. *Southwick, Inc. v. Lacey*, 58 Wn. App. 886, 891, 795 P.2d 712 (1990) (citing *Bellingham v. Schampera*, 57 Wn.2d 106, 111, 356 P.2d 292, 92 A.L.R.2d 192 (1960)). KCC 19.38 was enacted pursuant to RCW 58.17. KCC 19.38.010(A)(3). RCW 58.17.110 *requires* local governments to insure that proposed plats make appropriate provisions for the public health, safety, and general welfare, and for such open spaces such as parks, playgrounds, and sites for schools. RCW 58.17.110 provides that dedication of land to any public body may be required as a condition of subdivision approval. While RCW 58.17.110 does not itself authorize development fees, RCW 82.02.020 authorizes the County to impose development fees *in lieu of dedication* pursuant to RCW 58.17.110, provided that such agreements comply with the provisions of the statute.[5] RCW 82.02.020; *Henderson Homes, Inc. v. Bothell*, 124 Wn.2d 240, 242, 877 P.2d 176 (1994). *See* Martha Lester, Comment, *Subdivision Exactions in Washington: The Controversy Over*

---

[5]Under the version of RCW 82.02 applicable to this case, any such voluntary agreement is subject to the following provisions:

(1) The payment shall be held in a reserve account and may only be expended to fund a capital improvement agreed upon by the parties to mitigate the identified, direct impact;

(2) The payment shall be expended in all cases within five years of collection; and

(3) Any payment not so expended shall be refunded with interest at the rate applied to judgments to the property owners of record at the time of the refund . . .

No county, city, town, or other municipal corporation shall require any payment as part of such a voluntary agreement which the county, city, town, or other municipal corporation cannot establish is reasonably necessary as a direct result of the proposed development or plat.

RCW 82.02.020; Laws of 1982, 1st Ex. Sess., ch. 49, § 5. The statute, as amended in 1990, now provides more specific authority, *see* RCW 58.17.110, and procedural guidance for the imposition of impact fees. *See* RCW 82.02.050-.090. Laws of 1990, 1st Ex. Sess., ch. 17.

*Imposing Fees on Developers*, 59 Wash. L. Rev. 289, 298 (1984).

Contrary to Trimen's premise, the condition KCC 19.38 imposes upon plat approval is satisfaction of the *ordinance* — which requires either dedication of land *or* payment of a fee in lieu of dedication — not merely payment of a fee. KCC 19.38.020.

■■ Moreover, the ordinance on its face is not a "tax". We have previously stated that " 'if the primary purpose of the legislation is regulation rather than raising revenue, the legislation cannot be classified as a tax even if a burden or charge is imposed.' " *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 809, 650 P.2d 193 (1982) (quoting *Spokane v. Spokane Police Guild*, 87 Wn.2d 457, 461, 553 P.2d 1316 (1976)). We will not interpret a statute to deprive a municipality of the power to legislate on a particular subject unless that clearly is the legislative intent. *State ex rel. Schillberg v. Everett Dist. Justice Court*, 92 Wn.2d 106, 108, 594 P.2d 448 (1979). Read in its entirety, we conclude that the thrust of KCC 19.38 is regulatory. We hold that the imposition of park development fees is authorized by statute. *See* RCW 58.17.110; RCW 82.02.020. We therefore reject Trimen's facial characterization of KCC 19.38 as an invalid "tax".

Trimen also contends that King County's ordinance, as applied by the County, is invalid under RCW 82.02.020. Trimen alleges three specific violations of the statute: (1) Trimen's payment of the fees was not "voluntary"; (2) there was no "agreement" to fund a particular capital improvement; and (3) the County failed to identify a direct impact or result of Trimen's development which required mitigation. We disagree.

■ We interpret RCW 82.02.020 to require strict compliance with its terms. *R/L Assocs. v. Seattle*, 113 Wn.2d 402, 409, 780 P.2d 838 (1989). At the time King County approved Trimen's developments, RCW 82.02.020 specifically authorized: (1) dedications of land or easements pursuant to RCW 58.17.110 within the proposed development or plat "which the county . . . can demonstrate are reasonably necessary as

a direct result of the proposed development or plat to which the dedication of land or easement is to apply"; (2) voluntary agreements allowing payment "in lieu of a dedication of land" which the municipal corporation can establish are "reasonably necessary as a direct result of the proposed development or plat"; and (3) voluntary agreements allowing "payment . . . to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat" which the municipal corporation can establish are "reasonably necessary as a direct result of the proposed development or plat". Laws of 1982, 1st Ex. Sess., ch. 49, § 5; *see View Ridge Park Assocs. v. Mountlake Terrace*, 67 Wn. App. 588, 596, 839 P.2d 343 (1992), *review denied*, 121 Wn.2d 1016 (1993).

Under RCW 82.02.020, King County's park development fees are lawful if the fees are imposed pursuant to a voluntary agreement and are reasonably necessary as a direct result of the proposed development, or are required to mitigate the direct impact of the development.

## Payment of Fee Was Voluntary

Trimen claims that it paid the fees under duress. The Court of Appeals recently stated that within the context of RCW 82.02.020,

> the word "voluntary" means precisely that the developer has the choice of either (1) paying for those reasonably necessary costs which are directly attributable to the developer's project or (2) losing preliminary plat approval. *The fact that the developer's choices may not be between perfect options does not render the agreement "involuntary" under the statute.*

(Italics ours.) *Cobb v. Snohomish Cy.*, 64 Wn. App. 451, 457-58, 829 P.2d 169 (1991), *review denied*, 119 Wn.2d 1012 (1992). *See also* Comment, 59 Wash. L. Rev. at 297-98. In *Cobb*, the petitioners challenged a Snohomish County code which requires that developers share in the cost of improving road systems impacted by proposed land development projects. Under the code, developers may have to agree to contribute to certain road improvements in order to gain project approval. *Cobb*, at 453. The *Cobb* court upheld the

facial validity of the code's mitigation scheme. *Cobb*, at 458-59. *Cf. Ivy Club Investors Ltd. Partnership v. Kennewick*, 40 Wn. App. 524, 529, 699 P.2d 782 (park fee was not voluntary where Kennewick's approval of a condominium conversion was strictly conditioned upon payment of the fee), *review denied*, 104 Wn.2d 1006 (1985).

■ Although there may be some debate as to whether a decision between paying a fee or forgoing plat approval is "voluntary", such a decision was not before Trimen. In *Cobb*, Judge Agid declared that in order to be voluntary, "an agreement must at least present the parties with a viable choice." *Cobb*, at 464 (Agid, J., concurring in part, dissenting in part). King County presented Trimen with a viable choice — dedicate or reserve land for open space, or pay a fee in lieu of dedication. Trimen negotiated a reduced fee in lieu of dedication for both developments. King County accepted the reduced fees and Trimen paid the fees without protest. Given the record before us, we conclude that Trimen voluntarily paid the fee in lieu of dedication or reservation of land.

### Agreement To Fund a Capital Improvement

Trimen next argues that KCC 19.38 violates RCW 82.02.020 because it bypasses any developer participation in deciding the capital improvement to be funded by the fees. RCW 82.02.020(1) provides that "[t]he payment [of fees] may only be expended to fund a capital improvement *agreed* upon by the parties to mitigate the identified, direct impact". (Italics ours.) The statute does not define "agreement". KCC 19.38.070 provides in part:

> The fee so collected shall be appropriated only for acquisition and development of open space, park sites and recreational facilities within the park service area wherein the proposed subdivision is located. Such acquisition and development shall be consistent with any applicable Community Plan.

Clerk's Papers, at 73.

■ While there is no explicit provision in KCC 19.38 to *form* an agreement between the parties to fund a particular capital improvement, KCC 19.38 does require that the acquisition and development of open space and recreational

facilities be within the park service area where the subdivision is located in order to benefit the particular subdivision. For example, pursuant to the County's identification of a shortage of tennis courts in the Woodinville area, the funds collected for Winchester Hills I were allocated for the development of tennis courts in a park within Winchester Hills' park service area. In *Henderson Homes, Inc. v. Bothell*, 67 Wn. App. 196, 834 P.2d 1071 (1992), *rev'd*, 124 Wn.2d 240, 877 P.2d 176 (1994), Judge Agid stated in her dissent that Bothell violated RCW 82.02.020 because it approached these funds as a general revenue source for funding park improvements, and not as a method for " 'fund[ing] a capital improvement *agreed* upon by the parties to mitigate the identified, direct impact' " of the project on which the fees were imposed. *Henderson Homes*, 67 Wn. App. at 213 (Agid, J., dissenting) (quoting RCW 82.02.020(1)). On appeal, we likewise concluded that Bothell was spending the developers' impact fees for general park use, rather than to mitigate site-specific impacts as required by RCW 82.02.020. *Henderson Homes*, 124 Wn.2d at 249.

Contrary to Bothell's practice of using the collected fees to pay for park-related costs throughout the city in a manner totally unrelated to the plat upon which they were imposed, King County requires that such fees be used within the park service area. KCC 19.38.070.

### Fees Imposed as a Direct Result of Development

Trimen next claims that King County violated RCW 82.02.020 because it imposed the "in lieu of" fees without first identifying the direct impact or result of the proposed plat. King County argues that park development fees in lieu of dedication were reasonably necessary as a direct result of Trimen's proposed developments. We agree.

RCW 82.02.020 provides in part:

> No county . . . shall require any payment as part of such a voluntary agreement which the county, city, town, or other municipal corporation cannot establish is *reasonably necessary* as a direct result of the proposed development or plat.

(Italics ours.) Trimen claims that King County's failure to identify a "direct impact" of its development before imposing the fees violates RCW 82.02.020. Although Trimen is correct that King County did not conduct a site-specific study, the record indicates that the ordinance's requirement — to either dedicate land for open space or pay a fee in lieu of dedication — was reasonably necessary as a direct result of Trimen's development. *See View Ridge Park Assocs. v. Mountlake Terrace*, 67 Wn. App. 588, 599, 839 P.2d 343 (1992) (ordinance adopted prior to the filing of a plat application can be construed as a measure taken to mitigate a direct impact that has been identified as a consequence of a proposed development), *review denied*, 121 Wn.2d 1016 (1993).

King County conducted a comprehensive assessment of park needs in a 1985 report titled *Interim Assessment of King County Park Needs.* The report indicated that there was a deficit of approximately 107 park acres in the Northshore area serving the Winchester Hills I and II subdivisions. Based on adopted county standards, the report stated that over 300 acres of additional park land will be required in this area by the year 2000 to provide for the projected increase in population. Trimen's proposed subdivisions, with an expected occupancy average of three people per each of 112 potential residential units, created a need for an additional 2.52 acres of park land. The dedication or reservation of open space requirement of KCC 19.38, calculated at a reduced, negotiated figure of 5 percent, would have resulted in 2.096 acres of park and open space land. We conclude therefore that the fees imposed in lieu of dedication were reasonably necessary as a direct result of Trimen's proposed development. *See Dolan v. Tigard*, 62 U.S.L.W. 4576 (U.S. June 24, 1994) ("rough proportionality" between required dedication and impact of proposed development).

■ In *Henderson Homes*, Judge Agid cited Bothell's straight fee-per-lot charge as evidence that Bothell's assessment of park impact mitigation fees was made without any evaluation of the direct impact of the developments. *Henderson Homes*, 67 Wn. App. at 209 (Agid, J., dissenting). On

appeal, we concluded that Bothell in fact violated RCW 82.02.020. *Henderson Homes*, 124 Wn.2d at 247-48. Contrary to Bothell's fee structure, King County's fee in lieu of dedication is calculated based on zoning, projected population, and the assessed value of the land that *would have been dedicated or reserved.* King County's assessment of fees in lieu of dedication are specific to the site, unlike the fee-per-lot charge assessed by Bothell. *See* KCC 19.38.080. As Judge Agid stated: "If a fee is to be imposed in lieu of a dedication of land, the only rational, nonarbitrary way of determining the amount of the fee is to relate it to the value of the land which Bothell could require the developer to dedicate." *Henderson Homes*, 67 Wn. App. at 210 (Agid, J., dissenting).

We hold that King County's imposition of the park development fees was not unlawful under RCW 82.02. The County's action was based on the impact assessment published in 1985 and the 1990 Annual Growth Report. The County's method of calculating the amount of land to be dedicated, as well as the fees to be paid in lieu of dedication, was a reasonable, proactive approach to the regulation of development as mandated by RCW 58.17.110, and as authorized by RCW 82.02.020. While there was not a specific agreement between the parties to fund a particular capital improvement, King County's plat approval process did not impede Trimen's ability to recommend or seek a particular capital improvement within the park service area. Trimen was fully aware that any fees paid would be applied in the park service area and would benefit the residents of its developments.

We hold, therefore, that KCC 19.38 is lawful under RCW 82.02.020. King County correctly assessed the direct impact of Trimen's developments on the demand for neighborhood parks and imposed a fee reasonably necessary to mitigate these impacts. Since the County followed the requirements of a voluntary fee agreement under RCW 82.02.020, we uphold the legality of Trimen's agreement with King County to pay these park development fees.

## Statute of Limitations

■ In *Henderson Homes,* we concluded a 3-year statute of limitations governs a developer's challenge to the legality of a voluntary agreement to pay impact mitigation fees under RCW 82.02.020.

> This court has consistently held that the 3-year statute of limitations, RCW 4.16.080(3), applies to actions to recover invalid taxes. The same principle applies to fees or charges, direct or indirect, on the subdivision of land when they do not comply with RCW 82.02.020.

*Henderson Homes,* 124 Wn.2d at 248. This statute of limitations applies to a plaintiff's allegations that imposition of impact mitigation fees constitutes an illegal tax, regardless of a claim's ultimate merits. However, by characterizing a plaintiff's suit as one for recovery of an illegal tax, we do not suggest impact mitigation fees are taxes. When assessed correctly, as King County did here, impact mitigation fees are an appropriate alternative to requiring a developer to dedicate land for open spaces.

## Estoppel

The Court of Appeals held that Trimen's claims were also barred by estoppel, ruling that requiring the County to refund the fees now would "inequitably grant a benefit to Trimen at the expense of the County." *Trimen,* 65 Wn. App. at 703. Since we have ruled on the merits of Trimen's challenge to KCC 19.38, we need not address whether the doctrine of equitable estoppel applies.

## CONCLUSION

We reject Trimen's claim that KCC 19.38 is invalid on its face or as applied. We hold that King County's park development fees were lawfully imposed as a condition of plat approval. We affirm the judgment of the Court of Appeals.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, and JOHNSON, JJ., concur.

MADSEN, J. (concurring) — I would affirm the Court of Appeals on the grounds that the 30-day statute of limitations applicable to platting decisions applies to bar the developer's challenge to the King County ordinance at issue as discussed in my dissenting opinion in *Henderson Homes, Inc. v. Bothell*, 124 Wn.2d 240, 877 P.2d 176 (1994).