[No. 36209-7-I.    Division One.    September 16, 1996.]

VINTAGE CONSTRUCTION COMPANY, INC., *Appellant*, v.
THE CITY OF BOTHELL, *Respondent*.

*Larry J. Smith, Peter S. McCormick,* and *Graham &
Dunn,* for appellant.

*Wayne D. Tanaka* and *Ogden Murphy Wallace, P.L.L.C.,*
for respondent.

BECKER, J. — The City of Bothell conditioned approval

of a subdivision on the payment of a $400-per-lot fee. Bothell contends its methodology for calculating the fee satisfies the statute that permits a fee "in lieu of a dedication" of land for park purposes.[1] Under *Trimen Dev. Co. v. King County*,[2] a fee in lieu of dedication is permissible only if it is based on the value of land which the developer could be required to dedicate. Because Bothell did not determine in a site-specific manner the value of the land the developer could have been required to dedicate, the fee is invalid and must be refunded.

This action concerns fees imposed on the developer of Shawna Downs, an 80-acre subdivision which now lies in the City of Bothell. In the 1980's, the then-owner of the property submitted a proposal to build 142 homes on clustered lots. Portions of the property which were unsuitable for development would be dedicated to the City as permanent open space. Other portions of the property would be used for horse trails and an equestrian complex.

Bothell's Park Board reviewed the Shawna Downs proposal and found that there were no existing park facilities near the development. The Board recognized that the proposed horse trails would provide recreational benefits appealing to some, but felt that the additional 500 or 600 people in the area would also require a park with play facilities for pre-school children. Bothell's City Council later adopted the Park Board's finding that the proposed horse trails were only a "partial substitute" for neighborhood park space.

Bothell's subdivision code required a developer to dedicate five percent of the total area in the subdivision for park purposes. Other ordinances of the City allowed the developer to pay a fee "[i]n lieu of a dedication of land

---

[1]Former RCW 82.02.020 (1982).

[2]*Trimen Dev. Co. v. King County*, 124 Wn.2d 261, 877 P.2d 187 (1994).

or to mitigate a direct impact" of the development.[3] The developer of Shawna Downs ultimately signed a "Voluntary Park Contribution Agreement," agreeing to pay a fee of $400 per lot for "the acquisition of new park sites, improvements to these sites, or additions or improvements to existing facilities." The City conditioned its approval of the subdivision upon receipt of the fees and also upon construction of the proposed pedestrian and equestrian trails.

Vintage Construction Company acquired the Shawna Downs property in 1989, after the previous owner went bankrupt. Vintage completed the project and paid the promised fees, totaling $56,400, to the City of Bothell. Vintage later brought this action to recover the $56,400 in fees, plus interest, claiming that the City had collected the fees in violation of RCW 82.02.020.

RCW 82.02.020 regulates the imposition of local fees on developers. The statute, including the 1982 version that applies to this case, identifies two types of development fees that are permissible if the city can show they are reasonably necessary as the direct result of the development. One type is a fee in lieu of a dedication of land that the municipality could otherwise require. The other type is a fee to mitigate a direct impact caused by the development. The statute provides in part:

> No county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, on the . . . development, subdivision, classification, or reclassification of land. However, this section does not preclude dedications of land or easements pursuant to RCW 58.17.110 within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.
>
> This section does not prohibit voluntary agreements with

---

[3]Bothell Mun. Code § 22.04.040.

counties, cities, towns, or other municipal corporations that allow a payment in lieu of a dedication of land or to mitigate a direct impact that has been identified as a consequence of a proposed development, subdivision, or plat . . . .

. . . .

No county, city, town, or other municipal corporation shall require any payment as part of such a voluntary agreement which the county, city, town, or other municipal corporation cannot establish is reasonably necessary as a direct result of the proposed development or plat.[4]

Bothell has previously been involved in legal controversy over how a municipality can appropriately determine the fees permitted by this statute. While Vintage's action was pending, the Supreme Court decided *Henderson Homes v. Bothell*.[5] In *Henderson Homes*, Bothell attempted to justify its $400 per-lot fee as an impact fee, having conceded that it never sought any dedication of land.[6] The Supreme Court held that the fees were invalid because Bothell failed to identify or analyze the direct impact of the developments upon the park system.

As a companion case to *Henderson Homes*, the Supreme Court decided *Trimen Dev. Co. v. King County*,[7] also concerning the legality of fees imposed under RCW 82.02.020. In *Trimen*, the Court reviewed certain fees imposed by King County in lieu of dedication. The Court approved King County's methodology in part because its assessment of the fee, unlike Bothell's fee structure, was "specific to the site."[8]

Vintage and Bothell both moved for summary judgment.

---

[4]Former RCW 82.02.020 (1982). The statute was amended in 1990, providing additional authority and guidance for municipalities to impose impact fees. *See* RCW 82.02.020, .050-.090; *Trimen*, 124 Wn.2d at 268 n.4.

[5]*Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 877 P.2d 176 (1994).

[6]*Henderson Homes*, 124 Wn.2d at 242.

[7]*Trimen Dev. Co. v. King County*, 124 Wn.2d 261, 877 P.2d 187 (1994).

[8]*Trimen*, 124 Wn.2d at 275.

Vintage's motion emphasized that the fee in question was the very same $400-per-lot fee that the Court had ruled impermissible in *Henderson Homes*. Bothell responded that it was now prepared with a better analysis, and argued that the court could approve the fee imposed on Shawna Downs because the method of establishing the amount of the fee was similar to that approved in *Trimen*.

■ The trial court agreed with Bothell and dismissed Vintage's action with prejudice. We review the order of dismissal de novo.

■ At oral argument before this court, Bothell took the position that it was seeking to justify the funds collected from Vintage solely as a fee in lieu of dedication, not as an impact mitigation fee. *Trimen* unequivocally states that "If a fee is to be imposed in lieu of a dedication of land, the only rational, nonarbitrary way of determining the amount of the fee is to relate it to the value of the land which Bothell could require the developer to dedicate."[9]

To demonstrate a relationship between its fee and the value of an optional dedication, Bothell relies on the affidavit of its Community Development Director, Gordon Ericksen. Ericksen explained that the $400-per-lot figure represented the value of five percent of the land in an average development. The Bothell City Code required that developers dedicate five percent of land for useable open space to serve the park needs of the residents of the subdivision. If a developer wished to pay a fee in lieu of dedication, Bothell collected a per-lot fee based on city-wide averages. The city-wide average value of land was $28,000 per acre, and the average number of lots per acre was 3.5. The standard fee of $400 per unit was the result of the following calculation:

---

[9]*Trimen*, 124 Wn.2d at 275 (quoting *Henderson Homes, Inc. v. City of Bothell*, 67 Wn. App. 196, 210, 834 P.2d 1071 (Agid, J., dissenting) (1992), *rev'd*, 124 Wn.2d 240 (1994)).

$$\frac{\$28,000}{3.5 \quad x \quad 5\% \quad = \quad \$400}$$

Ericksen said that if Bothell had made this calculation using the actual value and actual density of the Shawna Downs acreage instead of citywide averages, the per-lot fee imposed on Vintage would have been higher than $400. Bothell's attorney told the trial court the fee was kept low as an incentive for developers to take the fee-in-lieu option instead of dedicating "a bunch of little parcels of land" that "are not that useable for true parks." Ericksen explained that the City's calculations were "extremely conservative":

> [T]he average price per acre of developable residential land was much higher [than $28,000] and developers could not always achieve at least 3.5 units per acre given the topography, site characteristics and the zoning classifications in the City. For instance, the Shawna Downs project's density was only 2.55 units per acre, while the land values in the Norway Hills area at the time were at least $28,000 per acre, if not higher. Therefore the City's base figure of $400 per unit fee in lieu of dedication was related to the actual impacts created by the Shawna Downs development.

Bothell thus maintains that the $400 fee is sufficiently *related* to the value of the land it could have required Vintage to dedicate because, as demonstrated by Ericksen's affidavit, it was actually *less* than that amount.

The fee that King County collected from Trimen was valid because the amount of the fee depended upon certain considerations, including assessed value, involving "the land that *would have been dedicated or reserved.*"[10] The problem with Bothell's present analysis is that it still does not establish a site-specific relationship between the amount of the fee and the value of "the land that *would*

---

[10]*Trimen*, 124 Wn.2d at 275.

*have been dedicated.*"[11] Bothell determined the fee of $400 as a city-wide base number without any individualized reference to an alternative dedication in Shawna Downs.

Bothell claims it is an elevation of form over substance to invalidate the fee simply because the City did not individualize its calculations to the particular development. We disagree. A generalized formula cannot establish in hindsight what the result of an individualized calculation would have been. The facts of this case are illustrative. Bothell's Park Board recognized that the horse trails in Shawna Downs were a partial substitute for neighborhood park facilities. If so, presumably that reduced the amount of land Bothell could require Vintage to dedicate for parks. Yet, because it was relying on a generalized formula, the City did not consider whether, or to what extent, the trails would alter the amount of the fee. In the absence of an individualized, site-specific calculation, Ericksen's explanation of the formula does not demonstrate that $400 per lot was necessarily less than the value of land that the City could have required as a dedication.

According to Ericksen, $400 was a "base number" and if the developer had raised questions about park impacts, the City would have been willing to adjust its analysis and negotiate the figure. But a "base number" cannot be the end of the city's calculation, even if it does provide a starting point. The statute places the burden on the municipality, not the developer, to show that the fee is reasonably necessary as a direct result of the development.[12] Where the city attempts to justify the fee as a fee in lieu of dedication, the city must demonstrate that the fee is related to the value of land that might otherwise be dedicated.[13] At a minimum this means the municipality, before asking for a fee in lieu of dedication, must actively consider along with

---

[11]*Trimen*, 124 Wn.2d at 275.

[12]RCW 82.02.020.

[13]*Trimen*, 124 Wn.2d at 275

the developer the dedication of a specific amount of land. Here, the record does not reflect that Bothell ever invited Vintage to dedicate any particular amount of land, and it does not reflect that Bothell ever calculated the value of a potential dedication within Shawna Downs. We therefore conclude that Bothell has not shown the necessary relationship between the fee of $400 per lot and the value of land that could have been dedicated.

Bothell argues that even if the fee violates the requirements of the statute, it may be upheld in this case as a lawful condition on annexation. The Shawna Downs property was originally in unincorporated King County. The developer entered into an annexation agreement with the City in order to allow for a relatively inexpensive hookup to the City's sewer system.

It is true that Bothell was under no obligation to annex the Shawna Downs property. Having decided to do so, however, the City was bound by the terms of RCW 82.02.020. With specified exceptions, the statute prohibits any fee, either direct or indirect, on the development of land. The statute does not make an exception in cases where the City has exercised discretionary authority to annex the property in question. The annexation agreement has no bearing on the analysis here.

The order of summary judgment dismissing Vintage's claim is reversed. The court on remand is directed to enter summary judgment for Vintage.

WEBSTER and AGID, JJ., concur.

Review granted at 131 Wn.2d 1008 (1997).