454

[No. 36066-7-II.    Division Two.    November 12, 2008.]

ISLA VERDE INTERNATIONAL HOLDINGS, LTD., ET AL.,
*Respondents*, v. THE CITY OF CAMAS,
*Petitioner*.

*William D. Kamerrer* (of *Law Lyman Daniel Kamerrer & Bogdanovich, PS*), for petitioner.

*Le Anne M. Bremer* and *Joseph Vance* (of *Miller Nash, LLP*), for respondents.

¶1 HUNT, J. — Defendant city of Camas (City) appeals the trial court's grant of summary judgment to developer Isla Verde International Holdings, Ltd., and Connaught International Holdings, Ltd. (Isla Verde) on the liability element of its Land Use Petition Act (LUPA)[1] petition for damages under RCW 64.40.020(1). The City argues that (1) Isla Verde failed to exhaust administrative remedies before filing its LUPA petition in superior court; (2) the trial court erred in ruling the City's conduct—imposition of a 30 percent open-space set-aside condition on Isla Verde's development—was an "unlawful act" for purposes of chapter 64.40 RCW damages; and (3) the trial court erred in granting summary judgment based on its unsupported ruling that the City knew or reasonably should have known that imposition of the 30 percent open-space set-aside condition was unlawful, which were material issues of fact.

¶2 Holding that whether the City knew or reasonably should have known its 30 percent open-space set-aside condition was unlawful are issues of material fact, we reverse summary judgment on the liability issue and remand for trial.

## FACTS

### I. PLAT APPLICATION

¶3 In 1995, Isla Verde submitted a preliminary plat application to the City to develop its 13.4-acre property into 51 lots. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146

---

[1] Land Use Petition Act, ch. 36.70C RCW.

Wn.2d 740, 746, 49 P.3d 867 (2002) (*Isla Verde* II). After hearing public comments, the Camas Planning Commission recommended that the city council approve the development with the following conditions: (1) construction of a secondary access road for emergency vehicles; (2) payment of impact fees for parks, recreational facilities, and open-space under Camas Municipal Code (CMC) 3.88.070; and (3) compliance with former CMC 18.62.020 (1991),[2] which required every development within a certain class to "retain a minimum of thirty (30%) percent of the site as open space" ("open-space set-aside").[3] *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 99 Wn. App. 127, 130 n.1, 990 P.2d 429 (1999) (*Isla Verde* I), *aff'd*, 146 Wn.2d 740.

¶4 The city council considered Isla Verde's application and the planning commission's recommendations. *Isla Verde* II, 146 Wn.2d at 748. Isla Verde objected to all of the planning commission's recommended conditions, especially the mandatory 30 percent open-space set-aside. *Id.* at 749. Attempting to negotiate a lesser set-aside, Isla Verde volunteered to pay the City money in exchange for the City's reducing the percentage of open-space to be set aside as a

---

[2] Former CMC 18.62.020 (1991) provided:

   A.   Proposals for lands within the City have [sic] a P-suffix zoning designation or being developed as a planned unit development or subdivision or short plat shall retain a minimum of thirty (30%) percent of the site as open space.

   B.   For the purpose of this section, "open space(s)" shall be defined to mean areas set aside and suitable for active or passive recreation; and areas maintained in a natural state, providing habitat for wildlife, and/or containing significant trees and vegetation. This requirement shall be in addition to any area required to be dedicated to meet standards for the provision of parks, schools, open space or other facilities except that the City may allow up to half (50 [percent]) of the required open space to be credited toward the Open Space Network.

[3] The City's open-space set-aside under former CMC 18.62.020 differs from a "dedication" in that the developer retains ownership of the open-space set-aside portion of the development on site. The developer does not transfer ownership to the City, as occurs with "dedication" of internal subdivision roads, for example, which then become City-owned and maintained public streets.

condition of plat approval.[4] *Id.* These negotiations apparently did not result in an agreement.

¶5 In July 1995, the city council approved Isla Verde's application on condition that Isla Verde (1) build a secondary access road for emergency vehicles in and out of the subdivision and (2) set aside 30 percent of the subdivision land as open-space, with no opportunities for Isla Verde to "buy down" the full percentage. *Id.* at 746-50.

## II. PROCEDURE

### A. First Appeal

#### 1. Superior court LUPA review

¶6 Seeking LUPA review of the City's allegedly unlawful conditions imposed on its proposed subdivision, Isla Verde filed an action for damages under RCW 64.40.020 in Clark County Superior Court. *Id.* at 750. The superior court ruled that the secondary access-road condition violated both constitutional substantive due process and chapter 64.40 RCW because this condition (1) was impossible to satisfy, unduly burdensome, arbitrary and capricious and (2) denied every viable use of the property. *Id.* The superior court also ruled that the mandatory 30 percent open-space set-aside condition was a "taking" in violation of the state constitution, RCW 82.02.020, and chapter 64.40 RCW, because the City had made no specific finding that Isla Verde development impacts necessitated this condition. *Id.* Accordingly, the superior court struck both subdivision plat approval conditions as unlawful.

¶7 The City moved for reconsideration. In support, it submitted a 1991 land use study on which it had based the mandatory 30 percent open-space set-aside requirement. This study, however, showed only the benefits of open-space

---

[4] The trial court characterized as "voluntary" Isla Verde and the City's negotiating whether Isla Verde could "pay down" the mandatory 30 percent set-aside.

generally; it did not tie the 30 percent open-space set-aside requirement to any specific impact of Isla Verde's development. *Isla Verde I*, 99 Wn. App. at 133. Refusing to consider the City's additional evidence as "untimely," the superior court denied the motion for reconsideration. *Id.* at 132-33.

## 2. Court of Appeals

¶8 The City appealed. We affirmed the superior court's ruling that the mandatory 30 percent open-space set-aside condition on Isla Verde's subdivision was unlawful. We held that the 30 percent open-space set-aside violated the takings clause of the Fifth Amendment to the federal constitution.[5] *Id.* at 137-38.

## 3. Supreme Court

¶9 The Washington Supreme Court granted the City's petition for review. *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 141 Wn.2d 1011, 10 P.3d 1071 (2000). The City argued that the conditions it had imposed on Isla Verde's development were valid. *Isla Verde II*, 146 Wn.2d at 745. With respect to the open-space set-aside condition, our Supreme Court disagreed.

¶10 The Supreme Court, however, did not address the constitutionality of the condition or the City's ordinance.[6] Instead, the court focused on the condition's illegality under

---

[5] Although the superior court ruled that the City's mandatory open-space set-aside constituted an improper "taking" under the state constitution, we limited our holding to the condition's violation of the takings clause of the federal Constitution. *Isla Verde I*, 99 Wn. App. at 137-38. Thus, other than mentioning RCW 82.02.020 in a footnote, we did not expressly address whether this condition also violated this statute. *Id.* at 140 n.4.

We reversed the superior court's ruling that the secondary access-road condition was improper; and we reinstated this requirement because the road "was designed to prevent a threat to the health, safety, and welfare of [the development's] residents." *Id.* at 136. This condition is not at issue in the instant appeal.

[6] The Supreme Court concluded that (1) the open-space set-aside condition violated RCW 82.02.020; (2) no statutory exceptions applied; and (3) therefore, it did not need to reach the constitutional takings issue. *Isla Verde II*, 146 Wn.2d at 764-65.

RCW 82.02.020. Emphasizing that the City had failed to show it had made an individualized determination to justify the mandatory 30 percent open-space set-aside condition, the Supreme Court held that the condition was an unlawful "in kind indirect 'tax, fee, or charge' on new development" under RCW 82.02.020.[7] *Isla Verde* II, 146 Wn.2d at 759. The court reasoned that (1) "[a]side from the ordinance requiring a flat 30 percent set aside for every proposed subdivision, there [was] nothing in the record explaining why 30 percent was chosen as the amount of open space" and (2) the lack of a correlation between the 30 percent open-space set-aside and impacts of Isla Verde's development rendered the condition unlawful under RCW 82.02.020. *Id.* at 763.

¶11 Although invalidating the 30 percent open-space set-aside condition, the court upheld the secondary access-road condition, *id.* at 769, and remanded the case for further proceedings. *Id.* at 771.

### B. Remand to Superior Court; Isla Verde's Claim for Damages

¶12 On remand, Isla Verde moved for partial summary judgment against the City on the issue of liability under chapter 64.40 RCW. Isla Verde argued that the City knew or reasonably should have known that Washington law requires a municipality to conduct an individualized analysis before imposing a blanket condition, such as the mandatory 30 percent open-space set-aside at issue here.

¶13 The City cross-moved for summary judgment, arguing that Isla Verde could not prevail at trial as a matter

---

[7] Former RCW 82.02.020 (1995) provided, in pertinent part:

Except as provided in RCW 82.02.050 through 82.02.090, no county, city, town, or other municipal corporation shall impose any tax, fee, or charge, either direct or indirect, . . . on the development, subdivision, classification, or reclassification of land. However, this section does not preclude dedications of land or easements within the proposed development or plat which the county, city, town, or other municipal corporation can demonstrate are reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.

of law because Isla Verde had failed (1) to challenge the open-space set-aside as unlawful under chapter 64.40 RCW on appeal, (2) to present evidence that the City knew or reasonably should have known its 30 percent open-space set-aside condition was unlawful, and (3) to present evidence of cognizable damages.

¶14 Agreeing, in part, with Isla Verde, the superior court concluded:

> [I]t is clear that the [c]ourts have consistently found that the action of the City in imposing the condition of 30 [percent] open-space on this development was not valid. Specifically, *applying this condition without a showing of need in this specific application violated RCW 82.02.020.*

Clerk's Papers (CP) at 388 (emphasis added). The superior court further noted that once the validity of the City's mandatory set-aside ordinance was challenged,

> [T]he City had the option of withdrawing the condition or appealing the Superior Court's decision. The City elected to appeal not only the Superior Court['s decision] but also that of the Court of Appeals. Clearly, at this juncture, the City should have known that the ordinance as applied was invalid. The wealth of reported case law in existence at this time supports this conclusion. Thus I find that the City's actions in defending the ordinance after the issue was raised, invokes the ramifications of RCW 64.40.
>
> . . . .
>
> I must allow petitioner the opportunity to prove any damages pursuant to the statute.

CP at 389-90.

¶15 Finding no genuine issue of material fact about whether the City knew or should have known that its blanket 30 percent open-space set-aside condition was unlawful, the superior court (1) denied the City's motion for summary judgment; (2) granted Isla Verde's motion for summary judgment on the knowledge/liability element of its claim; and (3) set the case for trial at which Isla Verde would prove what damages, if any, the City owed under chapter 64.40 RCW.

## C. Interlocutory Appeal

¶16 The City petitioned our court for discretionary review, which we granted on the limited issues of whether, as a matter of law, the City acted "unlawfully" and knew or reasonably should have known that its action was unlawful.[8] Thus, there has not yet been a trial on damages.

## ANALYSIS

¶17 Isla Verde filed a LUPA action against the City for damages under RCW 64.40.020. Isla Verde asserted that the City knew or reasonably should have known that its imposition of a mandatory 30 percent open-space set-aside was "unlawful" within the meaning of RCW 64.40.020(1), thus entitling it to damages, costs, and attorney fees as a matter of law. The trial court agreed and granted summary judgment to Isla Verde on the issue of liability under the statute.

¶18 RCW 64.40.020 provides, in part:

(1) Owners of a property interest who have filed an application for a permit have *an action for damages to obtain relief from acts of an agency which are* arbitrary, capricious, *unlawful*, or exceed lawful authority, or relief from a failure to act within time limits established by law: PROVIDED, That *the action is unlawful* or in excess of lawful authority *only if the final decision of the agency was made with knowledge of its unlawfulness* or that it was in excess of lawful authority, *or it should reasonably have been known to have been unlawful* or in excess of *lawful authority*.

(2) The prevailing party in an action brought pursuant to this chapter may be entitled to reasonable costs and attorney's fees.

---

[8] Our court commissioner originally denied the City's petition for discretionary review. A panel of judges granted, in part, the City's motion to modify the commissioner's decision; we granted review of only the trial court's summary judgment on the issue of liability under chapter 64.40 RCW.

(3) No cause of action is created for relief from unintentional procedural or ministerial errors of an agency.

(Emphasis added.)

## I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

¶19 The City first contends that Isla Verde's failure to file a chapter 64.40 RCW administrative claim, challenging the mandatory 30 percent open-space set-aside condition, precluded its filing a LUPA petition for damages in superior court.[9] Isla Verde counters that it objected to this condition at its first opportunity and in the proper forum.

¶20 The record supports Isla Verde. Until the City issued its final order, Isla Verde contested the City's open-space set-aside condition at every stage of the administrative proceedings below: (1) in its negotiations with the City for an agreement allowing Isla Verde to "buy down" the 30 percent set-aside,[10] (2) in proceedings before the Camas Planning Commission, and (3) in proceedings before the city council. When the City conditioned final plat approval on a 30 percent open-space set-aside, Isla Verde filed a LUPA petition in Clark County Superior Court, challenging the condition as a violation of RCW 82.02.020. *Isla Verde I*, 99 Wn. App. at 132-33.

¶21 The City neither specifically alleges nor demonstrates what additional administrative steps Isla Verde should have taken in order to exhaust further administrative options before filing its LUPA petition in superior court. Moreover, the superior court's written ruling mentions no administrative procedure deficiencies attributable to Isla Verde.

---

[9] Requiring administrative remedy exhaustion before initiating a LUPA action in superior court allows the parties to have "an opportunity consistent with due process to make a record on the factual issues." RCW 36.70C.120(1).

[10] The City abandoned negotiating with Isla Verde for an agreed "buy down" and, instead, imposed the mandatory 30 percent open-space set-aside as a condition of final plat approval.

¶22 Accordingly, we hold that the City has not shown that Isla Verde failed to exhaust its administrative remedies before filing its LUPA petition in superior court. Therefore, the trial court's summary judgment ruling is properly before us on appeal, and we now address the pertinent substantive issues.

## II. "UNLAWFUL ACT"

¶23 The City next argues that the trial court erred by granting summary judgment to Isla Verde based on ruling the following acts to have been "unlawful" for purposes of RCW 64.40.020: (1) the City's litigation in this case, unlawful under RCW 64.40.020(1),[11] and (2) the City's imposition of the mandatory 30 percent open-space set-aside condition, unlawful under RCW 82.02.020. We address each argument in turn.

### A. Litigation

¶24 Isla Verde counters that the City mischaracterizes the trial court's ruling on remand: (1) The trial court did not rule that the City's litigation in this case was an "unlawful act" for chapter 64.40 RCW purposes and (2) instead, the

---

[11] The City also argues that (1) its "litigation-related decisions and actions are not 'acts' under RCW 64.40.020," (2) "liability under RCW 64.40 cannot arise for such conduct," and (3) the trial court penalized the City's exercise of its right to appeal. Br. of Appellant at 11. These arguments fail.

Read in context, the trial court appears to have been noting that, once engaged in litigation with Isla Verde, (1) the City was on notice that the legality of its ordinance was in question and (2) thus, the City knew or should have known that Washington case law has definitively held illegal such ordinances as former CMC 18.62.020's imposition of a mandatory, predetermined open-space set-aside, absent a showing that the requirement was necessary to mitigate a specific negative impact created by the proposed development. For example, the trial court reasoned:

Clearly, at this juncture, the City should have known that the ordinance as applied was invalid. The wealth of reported case law in existence at this time supports this conclusion. Thus I find that the City's actions in defending the ordinance after the issue was raised, invokes the ramifications of RCW 64.40.

CP at 389. Thus, the trial court did not treat the City's litigation conduct as the "unlawful act" at issue here.

trial court ruled that the unlawful act was the City's imposition of the mandatory 30 percent open-space set-aside condition, which the Supreme Court had previously held unlawful under RCW 82.02.020. The record supports Isla Verde's characterization of the trial court's ruling that the City's unlawful "act" was its automatic imposition of the 30 percent open-space set-aside as a condition of plat approval in violation of RCW 82.02.020.

¶25 Accordingly, we do not further address the City's argument that the trial court improperly ruled its "litigation" was an "unlawful act" for purposes of Isla Verde's RCW 64.40.020 action for damages.

## B. Mandatory Open-space Set-aside

¶26 The City's challenge to the trial court's summary judgment ruling—that imposition of the 30 percent mandatory open-space set-aside was an "unlawful act" for purposes of RCW 64.40.020(1) damages—also fails. In remanding to the trial court after the first appeal in this case, the Supreme Court held that the City's 30 percent open-space set-aside condition was "unlawful" under RCW 82.02.020. *Isla Verde* II, 146 Wn.2d at 765. The Supreme Court's holding is determinative of this issue and binding. Therefore, we do not further consider it.

¶27 The Supreme Court did not, however, address the issue of whether the City knew or reasonably should have known that this condition was unlawful at the time the City imposed it in 1995. That issue was not before the court.

## III. Issues of Material Fact

¶28 Thus, the issue we now address is whether the City is liable to Isla Verde for potential damages under RCW 64.40.020(1) as a matter of law on summary judgment, without a trial on the issues of whether the City knew or reasonably should have known that its mandatory 30 percent open-space set-aside condition on Isla Verde's de-

velopment was an "unlawful act." The City argues that this is a genuine issue of material fact for trial and, therefore, we should reverse the trial court's summary judgment for Isla Verde on the issues of the City's knowledge and resultant liability.[12] We agree.

## A. Standard of Review

¶29 On review of a summary judgment, we perform the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004) (citing *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993)). The standard of review is de novo; summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reviewing a summary judgment motion, we view all facts in the light most favorable to the nonmoving party. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005) (citing *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990)).

## B. Whether City Knew or Reasonably Should Have Known that Its Act Was Unlawful

¶30 Based on a city ordinance, the City conditioned Isla Verde's final plat approval on a mandatory 30 percent open-space set-aside without showing a specific relationship between this condition and any potential negative impact of Isla Verde's development that this condition would mitigate. As we have already noted, in 1999, we held

---

[12] Inherent in this issue of material fact is the related, mixed issue of law and fact—whether, before the Supreme Court's 2002 *Isla Verde* holding, there was any case law or other ruling reasonably putting the City on notice that an ordinance-based mandatory open-space set-aside of the type at issue here was unlawful under RCW 82.02.020, which expressly prohibits levying only "any tax, fee, or charge, either direct or indirect," on a development.

this condition to be unlawful;[13] in 2002, the Supreme Court affirmed our result, but on other grounds.

¶31 At issue now is whether in 1995, when the City imposed this condition on Isla Verde's development, the City knew or reasonably should have known that such a condition was an "unlawful act" for purposes of establishing potential liability for damages under RCW 64.40.020(1). Acknowledging that this issue involves related questions of law, we nevertheless hold that it involves significant issues of material fact that require resolution by trial.

¶32 Again, the pertinent portion of RCW 82.02.020 provides: "[N]o . . . city . . . shall impose any tax, fee, or charge, either direct or indirect, . . . on the development [or] subdivision . . . of land." Thus, the plain language of RCW 82.02.020 expressly renders unlawful only monetary exactions such as taxes, fees, or other charges. In contrast, this statute does not mention or expressly render unlawful nonmonetary conditions, such as the on-site open-space set-aside condition at issue here. Although RCW 82.02.020 expressly allows local government to require dedications of land "reasonably necessary as a direct result of the proposed development or plat," the statute does not similarly address whether local government may impose conditions restricting an owner's use of substantial portions of property[14] that do not involve dedication for public use.[15]

---

[13] *Isla Verde* I, 99 Wn. App. at 130-31.

[14] See, for example Wash. Const. art. XI, § 11 and RCW 35A.01.010, which allow reasonable governmental regulations, such as zoning, setbacks, and other restrictions as part of the local government's so-called "police power." *See Hass v. City of Kirkland,* 78 Wn.2d 929, 932, 481 P.2d 9 (1971).

[15] Unlike the trial court, we cannot say as a matter of law that a condition analogous to the City's 30 percent open-space set-aside condition had ever been held unlawful in 1995, when the City imposed it on Isla Verde's development. Note 3 from our *Isla Verde* opinion illustrates the lack of clarity in this emerging area of law even in 1999. In note 3, we cited the latest United States Supreme Court case at the time, *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 702, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999), which expressly defined the term "exaction" to be "the *dedication of property to public use.*" (Emphasis added.)

The City, citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 702, 119 S. Ct. 1624, 1635, 143 L. Ed. 2d 882 (1999), argues that the

### 1. Supreme Court's 2002 *Isla Verde* decision

¶33 In 2002, in the instant case, our Supreme Court addressed for the first time a development condition that did not require dedication of land to the public, a fee in lieu of such dedication, or a "direct" "tax, fee, or charge" under RCW 82.02.020. *Isla Verde* II, 146 Wn.2d 740. Former CMC 18.62.020(A)[16] required new subdivisions to "retain a mini-

---

*Dolan* proportionality standard does not apply here because there was no "exaction" as the United States Supreme Court uses that term—"the dedication of property to public use." We disagree for the following reasons: (1) the language in *Del Monte Dunes* defining exactions is nonbinding dicta, *see Honesty in Environmental Analysis & Legislation (HEAL) v. Central Puget Sound Growth Management Hearings Bd.*, 96 Wn. App. 522, 534, 979 P.2d 864 (1999) (holding that *Del Monte Dunes* dicta did not control applicability of *Nollan/Dolan* to Growth Management Act regulations); and (2) even if *Del Monte Dunes* did control, the evidence indicates that the set-aside requirement was an exaction under the circumstances here. The City required Isla Verde to convey ownership of the property to the subdivision homeowner's association to meet the general public's perceived need for open space. *See River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 388 S.E.2d 538, 543 (1990) (conveyance of open space to homeowner's association equivalent to a dedication).

*Isla Verde* I, 99 Wn. App. at 140 n.3.

In *Monterey*, the United States Supreme Court did not address a restrictive on-site land use regulation (of the type at issue here) that did not require actual *dedication* of private property for public use. Apparently finding no binding federal or Washington cases on point, in rendering our *Isla Verde* decision in 1999, we cited a North Carolina case, *River Birch*, 388 S.E.2d at 543 (conveyance of open space to homeowner's association equivalent to a dedication), to support our holding that the City's restriction of Isla Verde's use of roughly one-third of its development was the functional equivalent of an "exaction" or dedication for purposes of takings analysis under the Fifth Amendment to the federal constitution.

[16] Former CMC 18.62.020 provided in pertinent part:

"A.  Proposals for lands within the city that are zoned for single-family or multifamily residential use shall retain a minimum of thirty percent of the site as open space.

"B.  For the purpose of this section, "open space(s)" shall be defined to mean areas set aside and suitable for active or passive recreation; and areas maintained in a natural state, providing habitat for wildlife, and/or containing significant trees and vegetation. This requirement shall be in addition to any area required to be dedicated to meet standards for the provision of parks, schools, open space or other facilities except that the city may allow up to half of the required open space to be credited toward the open space network.

"C.  To the extent possible, open space areas on a site should contain forested areas, significant trees, wildlife habitat for protected species, and any

mum of thirty (30%) percent of the site as open space." And this open-space requirement was *"in addition to any area required to be dedicated* to meet standards for the provision of parks, schools, open space or other facilities." CMC 18.62.020(B) (emphasis added). Nevertheless, the Supreme Court noted, "[T]he Camas ordinance authorizing the set aside condition is quite similar to the ordinance at issue in *Trimen*,[17] which required a dedication or reservation of open-space, or a fee in lieu thereof." *Isla Verde* II, 146 Wn.2d at 758-59.

¶34 Contrary to the dissent's assertion here,[18] the court then held, arguably for the first time, that (1) the City's

---

environmentally sensitive areas located on the site as identified on the city sensitive areas maps or discovered in the field. Where possible, individual open space areas should be contiguous to other existing or planned open spaces so as to permit creation of a larger contiguous area or a continuous corridor. Except where developed for active recreation, open space areas are to be maintained in a natural and undisturbed state.

"D.    Open space areas shall be protected and preserved through a permanent protective mechanism acceptable to the city. This may include placing the open space area in a separate tract; execution of a protective easement; or dedication to a public agency or public or private land trust. The mechanism or agreement shall provide for maintenance."

*Isla Verde* II, 146 Wn.2d at 746 n.2.

[17] *Trimen Dev. Co. v. King County*, 124 Wn.2d 261, 877 P.2d 187 (1994) (developers required either to dedicate a portion of land for the benefit of residents in the area or to pay a fee in lieu of the dedication); *Vintage Constr. Co. v. City of Bothell*, 83 Wn. App. 605, 922 P.2d 828 (1996) (developer required to pay $400 per lot fee in lieu of dedicating five percent of land for park purposes); *see also View Ridge Park Assocs. v. City of Mountlake Terrace*, 67 Wn. App. 588, 839 P.2d 343 (1992) (developers required to build recreational facilities or to pay a fee in lieu of building the facilities).

[18] The dissent asserts that such open-space set-aside conditions were previously held to be contrary to RCW 82.02.020, citing several cases, including *Isla Verde* II, 146 Wn.2d 740, in which our Supreme Court considered *for the first time* whether a nonmonetary set-aside condition imposed for plat approval was an unlawful "tax, fee, or charge" on a development within the meaning of RCW 82.02.020. As our discussion above explains, in our view, the Supreme Court's 2002 *Isla Verde* opinion arguably marks the first time that a Washington court definitively resolved this issue.

The dissent also cites the recent decision filed by Division One of our court in *Citizens' Alliance for Property Rights v. Sims*, 145 Wn. App. 649, 187 P.3d 786 (2008). *Citizens' Alliance* is consistent with our previous holding in the instant case as well as our current holding. But *Citizens' Alliance* does not support the dissent's assertion that the law on this issue before us here was settled in 1995, when King County imposed the condition; on the contrary, arguably this condition

mandatory 30 percent open-space set-aside condition was *"an in kind indirect* 'tax, fee, or charge' on new development" and (2) the City's ordinance mandating this condition violated RCW 82.02.020 because the City had failed to conduct any analysis showing that the 30 percent open-space set-aside was "reasonably necessary as a direct result of the proposed subdivision." *Isla Verde* II, 146 Wn.2d at 759 (emphasis added).

¶35 Since the Supreme Court's *Isla Verde* decision became final in 2002, it has been beyond dispute that the City's 30 percent open-space set-aside condition violated RCW 82.02.020. Thus, if the City had imposed such a condition *after* the Supreme Court's 2002 decision, we would likely agree with the dissent, as a matter of law, that the City knew or reasonably should have known that its action was unlawful. Such is not the case here, however, because the City imposed the condition at issue some seven years *before* the Supreme Court's *Isla Verde* decision holding, arguably for the first time, that the condition was unlawful under RCW 82.02.020.

## 2. Case law before the Supreme Court's 2002 *Isla Verde* decision

¶36 The Supreme Court's *Isla Verde* note 8 to the contrary,[19] the law on the issue before us here was not

was recognized as clearly unlawful only when Division One filed its *Citizens' Alliance* decision just two months ago. Unlike the procedural posture of the instant case, *Citizens' Alliance* does not address whether King County knew or reasonably should have known, as a matter of law, that the condition it imposed was unlawful at the time. On the contrary, Division One cites the Supreme Court's decision in the instant case, *Isla Verde* II, 146 Wn.2d 740, to support its holding that King County's imposed condition is *now* officially unlawful under RCW 82.02.020.

Furthermore, *Citizens' Alliance* does not involve liability for damages under RCW 64.40.020(1), such as the instant case. *Citizens' Alliance* does not present the same procedural posture. Thus, although consistent with the clear *Isla Verde* holdings that the City's 30 percent open-space set-aside condition here was unlawful, *Citizens' Alliance* has no bearing on the issue before us, namely *when* the City knew or reasonably should have known that its action was unlawful.

[19] The Supreme Court's note 8 suggests that the law on this point was previously clear:

previously so clear that we can say as a matter of law on summary judgment that the City knew or reasonably should have known that its 30 percent open-space set-aside condition was unlawful for purposes of RCW 64.40.020(1). Instead, before the 2002 *Isla Verde* decision, it was arguably clear only that monetary payments and actual dedications of land with optional monetary payments in lieu of dedication were unlawful conditions under RCW 82.02.020. In addition to *R/L Associates, Inc. v. City of Seattle*, 113 Wn.2d 402, 780 P.2d 838 (1989), the other cases that the Supreme Court cites in support of its *Isla Verde* holding involved either *dedication* of land to the local government or "voluntary" *payments* of "impact fees" in lieu of on-site dedication of land for open-space, parks, drainage, traffic improvements, or recreational facilities,[20] not restrictive regulation of the owner's use of land for which he retains ownership, like the on-site open-space set-aside condition at issue here. *Isla Verde* II, 146 Wn.2d at 749-50.[21]

---

[I]t has been clear since *R/L Associates, Inc. v. City of Seattle*, 113 Wn.2d 402, 780 P.2d 838 (1989) that this court interprets [RCW 82.02.020] according to its plain terms, thus including *all charges* without regard to whether the *payment* is a tax or not.

*Isla Verde* II, 146 Wn.2d at 753 n.8 (emphasis added). Nevertheless, in our view, here it remains an issue of material fact whether the City knew or reasonably should have known that its 30 percent open-space set-aside condition was unlawful in 1995, when it imposed the condition on Isla Verde's development. We reiterate that the issue before us in the instant appeal was *not* before the Supreme Court in its previous decision.

[20] *See Trimen*, 124 Wn.2d 261 (developers required either to *dedicate* a portion of land for the benefit of residents in the area *or* to pay a *fee in lieu of dedication*); *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 877 P.2d 176 (1994) (developers required to pay $400 per lot as a *park-impact mitigation fee*); *United Dev. Corp. v. City of Mill Creek*, 106 Wn. App. 681, 26 P.3d 943 (developer required to pay *traffic mitigation and park impact fees*), *review denied*, 145 Wn.2d 1002 (2001); *Vintage Constr.*, 83 Wn. App. 605 (developer required to pay $400 per lot *fee in lieu of dedicating* five percent of land for park purposes); *Castle Homes & Dev., Inc. v. City of Brier*, 76 Wn. App. 95, 882 P.2d 1172 (1994) (developer required to pay traffic impact mitigation fees); *View Ridge*, 67 Wn. App. 588 (developers required to reimburse the city for the proportionate cost of sidewalk construction bordering their properties and either to *build recreational facilities or to pay a fee in lieu* of building the facilities).

[21] In contrast here, the City's condition at issue did not require Isla Verde to *dedicate* land for open space for public use. And Isla Verde did not pay the City a fee in lieu of part of the required on-site 30 percent set-aside for open space:

¶37 Contrary to the dissent's assertion here, none of the cited cases in *Isla Verde* arguably involved a local government's required setting aside of open-space on site for which the local government did not seek transfer of title. Similarly, none of those cases arguably involved circumstances such as those at issue here, where the developer and future lot owners retained ownership but, nevertheless, could not develop the set-aside land because the City's plat approval condition required the that this open-space be "maintained in a natural and undisturbed state." Former CMC 18.62.020(C). Despite the Supreme Court's note 8, we are aware of no published opinion filed before its 2002 *Isla Verde* decision expressly holding that a nondedicated, on-site set-aside of open-space was equivalent to a "tax, fee, or [other] charge," unlawful under RCW 82.02.020. 146 Wn.2d 740.[22]

¶38 On the contrary, pre-*Isla Verde* case law suggests that RCW 82.02.020 did not expressly prohibit local government land use regulations similar to the open-space set-aside condition at issue here. See, for example, our 1990 decision in *Southwick, Inc. v. City of Lacey*.[23] The city of Lacey imposed the following conditions on Southwick, Inc.'s

Although Isla Verde and the City had discussed the possibility of a smaller set-aside accompanied by a corresponding offsetting fee, these negotiations failed. *Isla Verde* II, 146 Wn.2d at 749-50.

[22] *See supra* note 15.

[23] Judge Reed footnoted his opening sentence in *Southwick* in order to emphasize that the *Southwick* opinion considered *R/L Associates*:

This case was argued October 3, 1989. The Supreme Court issued *R/L Assocs., Inc. v. Seattle*, 113 Wn.2d 402, 780 P.2d 838 (1989) on October 12, 1989. After a request from this court, the parties here submitted supplemental briefs on the application of *R/L Assocs.* to the present case.

*Southwick, Inc. v. City of Lacey*, 58 Wn. App. 886, 888 n.1, 795 P.2d 712 (1990). The deference we accorded the city of Lacey was in direct response to the Supreme Court's then recent decision in *R/L Associates*.

We note that *R/L Associates* is also the case on which the Supreme Court relied in rendering its 2002 holding in the instant case, *Isla Verde* II, 146 Wn.2d at 753 n.8, that it has been clear that RCW 82.02.020 should be interpreted under its plain meaning. However, even with *R/L Associates* in mind as the note above suggests, we held that RCW 82.02.020's prohibition of taxes, fees, or charges on development did not include within its plain meaning nonmonetary conditions imposed on developments such as roads, sprinklers, and other infrastructure. With regard to

expansion of a funeral home complex and cemetery: (1) construction of street improvements, including street widening, paving, curb, gutter, sidewalk, and street lights; (2) installation of a street light at a driveway access to a road; (3) submission of plans by a registered professional engineer for the street improvements; (4) installation of fire sprinklers with a provision of 1,500 to 2,250 gallons per minute of water to the complex; and (5) installation of fire alarm system within the proposed complex. *Southwick*, 58 Wn. App. at 888.

¶39 Interpreting RCW 82.02.020, we noted:

> Because we have determined that this exaction [(the above conditions)] is not a tax, we need only determine if it is a fee or charge. A fee, like a tax, is a fixed charge, automatically applied to a designated activity. A charge is an obligation or a price. Arguably, it could include the conditions imposed on various land use and development permits. However, we decline to construe the term so broadly. To do so, would be inconsistent with the broad authority granted to local government in land use matters. The basis for this authority is Const. art. 11, § 11, which provides: "Any county, city, town or township may make and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws." So long as the subject matter is local and the legislation is reasonable, this grant of authority is as broad as the Legislature's authority. *Hass v. Kirkland*, 78 Wn.2d 929, 932, 481 P.2d 9 (1971). . . . The courts will not interpret a statute to deprive a municipality of the power to legislate on particular subjects unless that clearly is the legislative intent. *State ex rel. Schillberg v. Everett Dist. Justice Court*, 92 Wn.2d 106, 108, 594 P.2d 448 (1979). RCW 35A.01.010, the optional municipal code statute, under which Lacey operates, gives the municipality "the broadest powers of local self-government consistent with the Constitution of this state."

*Southwick*, 58 Wn. App. at 891-92 (footnote omitted).

---

the City's knowledge of unlawfulness, *Southwick* rendered RCW 82.02.020 unclear as to whether nonmonetary set-asides fell within the statute.

### 3. Case law after the Supreme Court's 2002 *Isla Verde* decision

¶40 Moreover, even after the Supreme Court's decisions in *R/L Associates* and *Isla Verde*, what constitutes an unlawful "tax, fee, or [other] charge" under RCW 82.02.020 arguably remained unclear. *R/L Assocs.*, 113 Wn.2d 402; *Isla Verde* II, 146 Wn.2d 740. As we previously noted, just this year, for example, in *Citizens' Alliance for Property Rights v. Sims*, Division One of our court held that a King County ordinance limiting clearing to a maximum of 50 percent on property zoned "rural area residential" constituted an in-kind, *indirect* "tax, fee, or charge" on development under RCW 82.02.020. 145 Wn. App. 649, 187 P.3d 786 (2008). Although the *Citizens' Alliance* trial occurred in 2005, after the Supreme Court's 2002 *Isla Verde* decision, the trial court concluded that the ordinance's clearing limitations *did not* constitute a "charge" on the development of a type prohibited by RCW 82.02.020. Thus, the trial court's grant of partial summary judgment to King County implies that the lawfulness of these non-fee-related conditions was not clear even three years *after* the Supreme Court's *Isla Verde* decision. With all due respect to our dissenting colleague's opposing point of view, *Citizens' Alliance* demonstrates that even post-*Isla Verde*, the law concerning the legality or illegality of a nondedication, nonfee condition of the type at issue here was *not clear*.

### CONCLUSION

¶41 Accordingly, we cannot hold, as the dissent posits, that as a matter of law or as an undisputed fact on the record before us, the City knew or reasonably should have known that imposition of its 30 percent open-space set-aside condition on Isla Verde's development was unlawful when the City imposed it in 1995.

¶42 Instead, we hold that there remain issues of material fact about whether the City knew or reasonably should

have known that it was acting unlawfully when it imposed the mandatory 30 percent open-space set-aside condition on Isla Verde's development. Therefore, we reverse the superior court's order granting summary judgment to Isla Verde and remand for trial on this limited issue of the City's knowledge of the unlawfulness[24] of its act at the time it imposed the 30 percent open-space set-aside as a condition of Isla Verde's final plat approval.[25]

PENOYAR, J., concurs.

---

[24] We note that the Supreme Court left intact our previous holding that the mandatory 30 percent open-space set-aside condition was unlawful because it violated the takings clause of the Fifth Amendment to the United States Constitution. *Isla Verde I*, 99 Wn. App. at 137-38. In previously concluding that the City's condition violated the Constitution, we relied on *Dolan v. City of Tigard*, 512 U.S. 374, 114 S. Ct. 2309, 129 L. Ed. 2d 304 (1994) and *Sparks v. Douglas County*, 127 Wn.2d 901, 904 P.2d 738 (1995), both of which addressed whether *dedications* for infrastructure as conditions of subdivision approval bear a reasonable relationship to a need created by the proposed development. Citing *Sparks* by analogy, we noted:

> *Dolan* is applicable to RCW 82.02.020, which "permits *dedications* as a condition for subdivision approval if the local government can show the conditions are 'reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply.' " *Sparks*, 127 Wn.2d at 913 (quoting RCW 82.02.020).

*Isla Verde I*, 99 Wn. App. at 140 n.4 (emphasis added).

We further note that *Sparks* was issued in November 1995, several months *after* Isla Verde filed its LUPA petition in the instant case. In *Sparks*, our Supreme Court noted that it was unclear whether *Dolan* applies to governmentally-required dedication for *future* road improvements; nevertheless, again consistent with our previous holding in *Isla Verde*, the *Sparks* court reiterated *Dolan*'s requirement that there must be a connection between the government's exaction and the development's impact in order to pass constitutional muster.

In extending the *Dolan* rule to the open-space set-aside condition here, however, we did not have before us nor did we address whether, because of the *Dolan* decision, the City knew or reasonably should have known that its action here was unlawful where, unlike *Dolan*, no dedication of land to the public was at issue. Thus, we leave to the superior court on remand to determine whether Isla Verde may submit evidence that the City knew or reasonably should have known that the ordinance-based condition was unlawful under the federal constitution.

Such determination would then be in addition to submitting for trial the issue of whether the City knew or reasonably should have known that it was acting unlawfully under RCW 82.02.020 when it imposed the mandatory 30 percent open-space set-aside as a condition of Isla Verde's final plat approval.

[25] We reiterate that because the Supreme Court has already conclusively determined that the City engaged in an "unlawful act" for RCW 64.40.020 purposes when it imposed the mandatory 30 percent open-space set-aside condi-

¶43 VAN DEREN, C.J. (dissenting) — I respectfully dissent from the majority's conclusion that the matter should be remanded to the trial court for trial on the issue of whether the city of Camas (City) knew or should have known that the mandatory open-space set-aside was an unlawful "act" under RCW 82.02.020. I would affirm the trial court and remand only for trial on the issue of damages to Isla Verde International Holdings, Ltd.[26]

¶44 Washington courts have consistently held that RCW 82.02.020 prohibits a city from imposing not only monetary taxes, but also other conditions that are not a "direct result" of the development's impact. For example, in *Southwick, Inc. v. City of Lacey*, we held that a city could "force the payment of fees through [agreements only] after showing that (1) the fee is to mitigate a direct impact, and (2) the fee is reasonably necessary as a direct result of the proposed development." 58 Wn. App. 886, 895, 795 P.2d 712 (1990) (citing RCW 82.02.020). Similarly, Division One of our court has held that a county bore the burden of showing that

tion on Isla Verde's development, this issue is not subject to further litigation on remand.

If it is determined at trial on remand that the City knew or reasonably should have known in 1995 that the 30 percent open-space set-aside condition it imposed on Isla Verde's development was unlawful, then we leave to the trial court to determine how to proceed on the issue of RCW 64.40.020(1) damages, costs, and fees.

[26] Furthermore, I believe that the majority's legal analysis dictates a result in favor of the City, thus making remand for a trial unnecessary on the issue of whether the City knew or should have known that its condition was illegal. The majority holds that it was not until 2002, when our Supreme Court decided *Isla Verde International Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 49 P.3d 867 (2002) and "held, arguably for the first time, that (1) the City's mandatory 30 percent open-space set-aside condition was '*an in kind indirect* "tax, fee, or charge" on new development.' " Majority at 469-70 (quoting *Isla Verde*, 146 Wn.2d at 759). In stating its disagreement with the court in *Isla Verde*, the majority also concludes that "pre-*Isla Verde* case law suggests that RCW 82.02.020 did not expressly prohibit local government land use regulations similar to the open-space set-aside condition at issue here." Majority at 472. The majority even holds that arguably post-*Isla Verde* the law was unclear. Majority at 474. Thus, the majority's opinion makes remand for trial on the knowledge issue unwarranted and unduly expensive and time-consuming for the parties. In light of the majority's opinion that the law was and is arguably unclear, a trial on whether the City informed itself of the law or whether, if it did so, it understood the law to prohibit the condition imposed on Isla Verde, constitutes a regrettable use of resources and time.

"required improvements were 'reasonably necessary' to mitigate the direct impact of the development" before the county could make them a condition of plat approval. *Cobb v. Snohomish County*, 64 Wn. App. 451, 459, 829 P.2d 169 (1991) (quoting *Southwick, Inc.*, 58 Wn. App. at 895).

¶45 Then again in July 1994, a full year before the City imposed the 30 percent set-aside condition on Isla Verde in July 1995, our Supreme Court held a preset fee invalid in *Henderson Homes, Inc. v. City of Bothell*, 124 Wn.2d 240, 877 P.2d 176 (1994). The city of Bothell had conditioned approval of Henderson Homes' subdivision development on payment of a predetermined park-impact fee. *Henderson Homes*, 124 Wn.2d at 241. Holding that the legislature intended RCW 82.02.020 to allow municipalities to impose such fees narrowly, the court concluded that Bothell's failure to correlate the preset fees with the development's impact rendered the fee invalid under RCW 82.02.020. *Henderson Homes*, 124 Wn.2d at 248.[27]

¶46 In considering the City's actions in this case, our Supreme Court repeated, albeit in a footnote, what it and our court have consistently observed, "[I]t has been clear since *R/L Associates[, Inc.] v. City of Seattle*, 113 Wn.2d 402, 780 P.2d 838 (1989)[28] that this court interprets [RCW 82.02.020] according to its plain terms, thus including all charges without regard to whether the payment is a tax or not." *Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 753 n.8, 49 P.3d 867 (2002). Accordingly, the court held that (1) the City's mandatory open-space set-aside condition was "an in kind, indirect 'tax, fee, or charge' on new development" and (2) the City's ordinance mandat-

---

[27] In contrast, see *Trimen Development Co. v. King County*, in which our Supreme Court upheld a county's imposition of park development fees under RCW 82.02.020 because the fees were "reasonably necessary as a direct result of [the specific] development." 124 Wn.2d 261, 274, 877 P.2d 187 (1994) (citing *View Ridge Park Assocs. v. Mountlake Terrace*, 67 Wn. App. 588, 599, 839 P.2d 343 (1992)).

[28] In *R/L Associates*, our Supreme Court held that "a charge on demolition or change in use of residential units certainly constitutes, at least, an indirect charge on either the construction of residential units or the development of land generally." 113 Wn.2d at 407.

ing this condition violated RCW 82.02.020 because the City had failed to conduct any analysis showing that the mandatory 30 percent open-space set-aside was "reasonably necessary as a direct result of the proposed subdivision[s]." *Isla Verde*, 146 Wn.2d at 759 (citing RCW 82.02.020), 760.

¶47 Thus, I also disagree with the majority that one trial court's lack of understanding of the law in this area is compelling evidence that the law was unclear after *Isla Verde*. Majority at 474. In *Citizens' Alliance for Property Rights v. Sims*, 145 Wn. App. 649, 187 P.3d 786 (2008), "the trial court concluded that [a King County ordinance limiting clearing to a maximum of 50 percent on property zoned 'rural area residential'] *did not* constitute a 'charge' on the development of a type prohibited by RCW 82.02.020." Majority at 474. On appeal, Division One of this court corrected the trial court and, relying heavily on the Washington Supreme Court's holding in *Isla Verde*, held that the ordinance was a " 'tax, fee, or charge' " (quoting RCW 82-.02.020) for failing to "relate the clearing limit to the nature and extent of the proposed development on the lot" and violated RCW 82.02.020. *Citizens' Alliance*, 145 Wn. App. at 656, 668.

¶48 Since 1990, well in advance of the City's unlawful act here, the legislature and the Washington courts established that a governmental entity could not legally condition approval of a subdivision on predetermined mandatory conditions, absent an individualized determination of the condition's relation to the development and a need for this condition to mitigate specific identified impacts of the development. Thus, I would hold that the City should have known that its enforcement of the mandatory set-aside ordinance against Isla Verde's development, without a specific showing of need to mitigate specific impacts of Isla Verde's development, violated RCW 82.02.020. Any governmental entity that seeks to burden an owner's right to use private property can reasonably be expected to inform itself of the applicable law before invading or diminishing that right, and its failure to do so or its failure to understand the

law and properly apply it should not further burden the property owner.

¶49 I would affirm the trial court and remand only for determination of Isla Verde's damages under chapter 64.40 RCW.